# United States Court of Appeals
## For the First Circuit

Nos. 05-2492, 05-2493

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS D. CRUZ-RODRÍGUEZ,
FELIX REYES-DE LEÓN,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Lynch, Chief Judge,

Howard, Circuit Judge,

and Young,* District Judge.

Johnny Rivera Gonzales for appellant, Carlos D. Cruz-Rodríguez.
Raymond L. Sanchez-Maceira for appellant, Felix Reyes De León.
Thomas F. Klumper, Assistant United States Attorney, with whom Rosa Emilia Rodriguez-Velez, United States Attorney and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

September 8, 2008

*Of the District of Massachusetts, sitting by designation.

**HOWARD, Circuit Judge.** An indictment charged twenty-six defendants with crimes arising from their involvement in a large drug distribution network that operated in a Puerto Rico housing project. These are appeals by two of the defendants -- Carlos D. Cruz-Rodríguez (Cruz) and Felix Reyes-de León (Reyes).

After an eight-day trial a jury convicted Cruz and Reyes of conspiring to possess with the intent to distribute cocaine, crack cocaine, and heroin within 1000 feet of both a school and a public housing facility. See 21 U.S.C. §§ 841, 846, 860 (count one). The jury also convicted Cruz of two other offenses stemming from the drug distribution conspiracy -- conspiring to use, carry, or possess a firearm in furtherance of a drug trafficking crime, see 18 U.S.C. § 924(o) (count two), and possessing a firearm at a place he knew or had reasonable cause to believe was a school zone, see 18 U.S.C. § 922(q)(2)(A) (count three). The district court sentenced Cruz to 202 months' imprisonment on counts one and two and 60 months' imprisonment on count three to be followed by eight years of supervised release. The prison sentences were to be served consecutively. The court sentenced Reyes to 324 months' imprisonment on the sole count on which he was convicted, count one, and to three years of supervised release. Reyes's incarcerative sentence was consecutive to the undischarged portion of a state sentence Reyes was serving.

Cruz and Reyes appeal both their convictions and sentences. Each presses a sufficiency challenge to his conviction; Cruz argues that the evidence failed to implicate him in any conspiracy and Reyes contends that the evidence implicated him in a conspiracy different from the one charged.[1] Each also claims that the district court committed a host of errors, mostly procedural, in sentencing. We affirm both the convictions and the sentences.

## I. Facts

We provide most of the facts here, adding more or elaborating when discussing particular issues. Because the facts stated here are relevant to the appellants' sufficiency claims, we present them in the light most favorable to the jury's verdict. United States v. Portela, 167 F.3d 687, 692 (1st Cir. 1999).

The crimes charged in this case arise from the operation of a drug distribution network in a Puerto Rico housing project. The network, which operated from mid-September 2001 to mid-March 2003, was hierarchical.

At the top was Orlando Malpica. Malpica controlled a number of "drug points" in the housing project. These drug points were located in the same general area and each was within 1000 feet of two public schools.

---

[1] Cruz also claims the court committed an evidentiary error during trial.

Below Malpica were various individuals who rented the drug points from him. Collectively, these "point owners" sold a variety of drugs including marijuana, cocaine, crack cocaine, and heroin.

Working beneath the drug point owners were the drug "runners" and "enforcers." The runners delivered drugs from the drug points to the "sellers" who were the ground-level distributors. These runners would also relay a portion of the profits gleaned from the sales to the drug point owners. The enforcers were charged with protecting the sellers and protecting the drug points from out-of-project predators -- local gangs that desired control of the points. To serve this function, they carried firearms. Only they and others associated with the conspiracy were permitted to possess firearms at the project.

After investigation, the government sought and received an indictment from the grand jury. Twenty-six individuals, including Cruz and Reyes, were charged with crimes arising from the scheme. Cruz and Reyes elected to go to trial and were tried together.[2]

At trial, the government introduced testimonial evidence implicating Cruz as a drug point owner. A cooperating witness, who had lived with Cruz for a period of time, testified that Cruz was a drug point owner, that he sold a variety of drugs from his point,

_____

[2] Most of those indicted pled guilty.

-4-

that he paid rent to Malpica in the form of money and drugs, and that he and another point owner informed her of their plan to open an additional point and asked her in advance to run drugs for the point. This witness also testified that, during the time of the conspiracy, Cruz possessed an automatic firearm and carried it with him while at the project. Two other government witnesses corroborated much of this testimony and otherwise testified consistently with it.

With respect to Reyes, the government presented evidence portraying him as a jack of all trades -- a runner, enforcer, and seller. Witnesses testified that he ran drugs for point owners, that he worked as an enforcer for Alex Trujillo -- a point owner who would later take over the top spot in the conspiracy while Malpica was in prison, and that he sold crack cocaine to ground-level customers.

The jury found both Cruz and Reyes guilty on the distribution conspiracy count and Cruz alone guilty on the firearm conspiracy count and the firearm possession count. Challenging the sufficiency of the evidence, both defendants filed motions for judgments of acquittal on all counts. See Fed. R. Crim. P. 29(c). The district court, finding the evidence adequate, denied the motions.

## II. Discussion

### A. Trial

#### 1. Sufficiency claims

We first address the appellants' sufficiency claims, examining each in turn. Because both Cruz and Reyes moved for a judgment of acquittal on sufficiency grounds, our review of these claims is de novo. See United States v. Jimené-Torres, 435 F.3d 3, 8 (1st Cir. 2006).

In assessing sufficiency, we examine the evidence, both direct and circumstantial, in the light most favorable to the prosecution and decide whether that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime. United States v. Fenton, 367 F.3d 14, 18 (1st Cir. 2004). When examining the evidence, we keep in mind that "[c]redibility issues must be resolved in favor of the verdict." United States v. Perez-Ruiz, 353 F.3d 1, 7 (1st Cir. 2003).

Cruz argues that the evidence was insufficient to show either that he conspired to distribute drugs or to possess a firearm. Our inquiry is thus focused on whether a rational factfinder could have found that he was guilty of conspiring to distribute drugs near a housing project and of conspiring to use,

carry, or possess a firearm in furtherance of a drug trafficking crime.[3]

To prove a conspiracy existed, the government must prove beyond a reasonable doubt: (1) that an agreement existed to commit the particular crime; (2) that the defendant knew of the agreement; and (3) that he voluntarily participated in it. United States v. Gomez, 255 F.3d 31, 35 (1st Cir. 2001). The conspiratorial agreement may be "express or tacit and may be proved by direct or circumstantial evidence." Id. (quoting United States v. Sepulveda, 15 F.3d 1161, 1173 (1st Cir. 1993) (internal quotation marks omitted)).

Cruz's sufficiency argument is straightforward. He contends that the government failed to introduce any evidence, whether direct or circumstantial, showing that he conspired to deal drugs or that he used, carried, or possessed a firearm -- much less that he conspired to use, carry, or possess one in furtherance of a drug trafficking crime. He likens the government's prosecution of him to a witch hunt in which he was targeted merely because he associated with or was friends with some drug dealers. This association, in Cruz's view, is the only thing the government proved at trial and, citing established authority, he argues that

_____

[3] As for the third count of conviction, Cruz does not argue that if the government did prove he possessed a firearm in a school zone, it failed to prove that he knew or had reasonable cause to believe that this possession occurred in a school zone.

-7-

associating with conspirators is not enough to support a conviction for conspiracy. See e.g., United States v. Nelson-Rodriquez, 319 F.3d 12, 28 (1st Cir. 2003) ("'Mere association' with the conspirators . . . will not, standing alone, be sufficient for conviction.") (citing United States v. Gomez-Pabon, 911 F.2d 847, 853 (1st Cir. 1990)).

The record does not support Cruz's claim of innocence. The government introduced a videotape of a meeting of armed conspirators at which Cruz was present, supporting an inference that he was more than a bystander. See United States v. Llinas, 373 F.3d 26, 31 (1st Cir. 2004) (noting that defendant's close association with other conspirators is a relevant factor for the jury to consider). But there was much more. Additional evidence came in the form of testimony from a government informant and two cooperating witnesses. These witnesses detailed the drug distribution network operating within the housing project. They testified that Orlando Malpica was a drug kingpin who controlled all the drug points in the housing project and that drug point owners had to seek permission from Malpica to operate a drug point and would pay him rent for this privilege.

In addition to this general testimony about Malpica's operation, prosecution witnesses testified specifically about Cruz's role in the operation. One cooperating witness who lived with Cruz during the alleged conspiracy period -- and who happened

to be Malpica's niece -- testified that Cruz was a drug point owner who sold marijuana and crack, that he paid rent to Malpica in the form of money and drugs, that he smuggled rent to Malpica when Malpica was in prison, and that he and another point owner asked her to run drugs for them. This testimony about Cruz's role within the distribution network was corroborated by two other government witnesses. These witnesses testified that Cruz operated a drug point; paid rent to Malpica; sold various drugs including marijuana, cocaine, and crack; employed others to sell drugs for him; and was seen often with Trujillo -- the drug point owner who had replaced Malpica as the conspiracy leader when Malpica went to prison.

Prosecution witnesses also testified generally about the use of firearms within the project and specifically -- based on personal observation -- about Cruz's use of a firearm. They testified that conspiracy members used firearms to protect drug points from being taken over by out-of-project gangs; that only members of the Malpica-Trujillo conspiracy could carry firearms at the project; that while Cruz was a drug point owner he possessed an automatic firearm and carried it with him while at the housing project; and that drug points in the housing project were located within 1000 feet of two public schools.

Based on this evidence, a rational jury could have found beyond a reasonable doubt that Cruz was guilty on all three counts

-9-

charged. That the government did not present physical evidence that Cruz dealt drugs or possessed a firearm is not dispositive -- it did not need to do so in order to secure a conviction. See United States v. Magallanez, 408 F.3d 672, 681 (10th Cir. 2005) ("Lack of physical evidence does not render the evidence that is presented insufficient.") (citation omitted)); see also United States v. DeCologero, Nos. 06-1274, 06-2390, 06-2391, 06-2392, 06-2569, 07-1086 2008 U.S. App. LEXIS 13300, at * 56 (1st Cir. June 23, 2008) (noting that evidence may be sufficient to convict even if it is "entirely circumstantial") (quoting United States v. Wight, 968 F.2d 1393, 1395 (1st Cir. 1992)). The direct and circumstantial evidence offered by the government was sufficient.

We now turn to Reyes's sufficiency claim. Reyes's argument is that the evidence presented was at variance with the allegations contained in the indictment. See United States v. Soto-Beníquez, 356 F.3d 1, 18 & n.1 (1st Cir. 2003). He argues that while the record may contain evidence sufficient to link him to a drug conspiracy, it does not contain evidence sufficient to link him to the single drug conspiracy charged, namely, the Malpica-Trujillo conspiracy. He thus could not have been involved in the single conspiracy charged, he asserts, because a prosecution witness testified Reyes had a falling out with one of the conspiracy's leaders Alex Trujillo. This witness testified that although Trujillo and Reyes were inseparable at one point, and in

-10-

fact lived together for a time, they eventually had a falling out, and from that point on there were "always problems between them." Reyes appears to suggest that this testimony was enough to render the evidence presented of his involvement in the Malpica-Trujillo conspiracy insufficient to convict.

This argument must be rejected, because the government adduced evidence sufficient to convict Reyes of the conspiracy charged. See Soto-Beníquez, 356 F.3d at 18 & n.1 (declining to reach the variance argument because sufficient evidence supported jury's finding of a single conspiracy). When determining whether the proof suffices to establish a single, overarching conspiracy, we look to the totality of the circumstances. Id. at 19. This entails considering factors such as: "(1) the existence of a common purpose, such as selling drugs for profit, (2) the interdependency of various elements in the plan, such as whether the success of an individual's own drug transactions depends on the health and success of the drug trafficking network that supplies him, and (3) the degree of overlap among the participants." Id.

In conducting our sufficiency analysis, we remain aware that the government may provide evidence sufficient to convict without showing that: (1) each conspirator knew of or had contact with all other members; (2) each conspirator knew of all the details of the conspiracy or participated in every act in furtherance of it; or (3) the conspiratorial "cast of characters"

-11-

remained intact throughout the duration of the entire enterprise. Id.

Here, as described above, the government presented evidence of a single overarching drug distribution conspiracy led by Orlando Malpica and Alex Trujillo. The distribution network was hierarchical and its success depended on conspiracy members performing various tasks, including distributing illicit drugs to ground-level sellers; protecting conspiracy members and drug points from out-of-project gangs; and making ground level sales.

The government presented evidence that Reyes performed all three of these tasks during the life of the conspiracy. As was the case with Cruz, this evidence came in the form of testimony from three government witnesses. These witnesses testified that Reyes ran drugs, both supplying the ground-level sellers and picking up money for point owners; used firearms to protect Trujillo and Trujillo's drug point; often carried and brandished firearms while at the project; and sold crack to ground-level customers. Given that the government presented evidence that only conspiracy members could carry firearms at the project and that witnesses linked Reyes to lead conspirator Trujillo, a rational jury could have found that Reyes was part of the Malpica-Trujillo conspiracy.

Reyes's argument, that his falling out with Trujillo rendered the evidence of his involvement in the charged conspiracy

insufficient, lacks force.  There is no requirement that co-conspirators work together harmoniously when pursuing their illicit aims, and even if Reyes's problems with Trujillo were of such magnitude that they prevented him from working directly with Trujillo, he could still have remained a functioning cog in the conspiracy machine.  See United States v. Thompson, 449 F.3d 267, 273 (1st Cir. 2006) (explaining that the defendant's "falling out" with his coconspirator did not extricate him from the conspiracy because the defendant could remain part of the conspiracy without maintaining direct contact with his coconspirator); Soto-Beníquez, 356 F.3d at 19 ("The government need not show that each conspirator . . . had contact with all other members.").  At best, the fact that Reyes and Trujillo had a falling out could be relevant to a withdrawal argument.  Reyes makes no such argument, nor could he based on the record evidence.  See United States v. Pizarro-Berríos, 448 F.3d 1, 10 (1st Cir. 2006) ("'[I]n order to withdraw from a conspiracy, a conspirator must act affirmatively either to defeat or disavow the purposes of the conspiracy.  Typically, that requires either a full confession to authorities or a communication by the accused to his co-conspirators that he has abandoned the enterprise and its goals.'") (quoting United States v. Piper, 298 F.3d 47, 53 (1st Cir. 2002)).

## 2. Evidentiary ruling

Cruz also argues that the district court erred in denying his request to present testimony from two government investigators. At trial, Cruz argued that the testimony of these agents would impeach the testimony of previously called government witnesses. Specifically, he asserted that although the prosecution witnesses testified that they made certain statements to the agents, the agents would testify that notes they took when interviewing these witnesses failed to reflect those statements. The district court, however, ruled that the extrinsic evidence Cruz sought to admit -- the testimony of the agents -- was inadmissible because it involved impeachment by contradiction on a collateral matter. Although Cruz's argument on appeal does not address the court's collateral matter ruling in any developed fashion, he maintains that the agents' testimony was admissible under Federal Rule of Evidence 613 which allows impeachment by prior inconsistent statement.[4] Because

---

[4] Cruz appears to confuse impeachment by contradiction with impeachment by prior inconsistent statement. See United States v. Morla-Trinidad, 100 F.3d 1, 5 n.3 (1st Cir. 1996) (explaining that impeachment by contradiction is not specifically treated in the Federal Rules of Evidence and is governed by common-law principles) (citations omitted); see also Fed. R. Evid. 613 (impeachment by prior inconsistent statement). Although there is some overlap, the former category is broader than the latter. At trial, Cruz sought to introduce extrinsic evidence that the witnesses did not make prior statements to government agents. Cruz did not attempt to offer evidence that the witnesses made prior statements inconsistent with their trial testimony. In any event, whether a party is seeking to impeach by prior inconsistent statement or by contradiction the collateral matter rule remains applicable.

-14-

Cruz preserved his claim below, we review the district court's ruling for an abuse of discretion. United States v. García-Ortiz, 528 F.3d 74, 79 (1st Cir. 2008).

Cruz's appellate argument fails to sufficiently address the merits of the court's collateral matter ruling. See DeCologero, 2008 U.S. App. LEXIS 13300 at * 41-42. The district court could have concluded that although the officer's testimony was relevant to prove a contradiction, the contradiction involved a collateral matter. United States v. Beauchamp, 986 F.2d 1, 3 (1st Cir. 1993) ("It is well established that a party may not present extrinsic evidence to impeach a witness by contradiction on a collateral matter."). On appeal, Cruz needed to argue both that the evidence was admissible for some purpose and that the evidence was useful to impeach the government witnesses on a non-collateral matter. His failure to develop the latter argument results in waiver of this claim. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").[5]

_____

[5] In the alternative, the government argues that Cruz could not have admitted extrinsic evidence of a prior inconsistent statement because he failed to lay the appropriate foundation. The government says that Cruz had to confront the prosecution witnesses with their prior inconsistent statements while they were on the witness stand in order to afford them "an opportunity to explain or deny [their earlier statements]." See Fed. R. Evid. 613(b). As we noted earlier, Rule 613 is not at issue here. But the government's perception of Rule 613's foundation requirements is incorrect. We

### B. Sentencing

#### 1. Cruz

The district court sentenced Cruz to 262 months' imprisonment and eight years of supervised release. Specifically, the court sentenced him to 202 months in prison on the first two counts (conspiring to possess drugs with intent to distribute and conspiring to carry, use, or possess a firearm in furtherance of a drug trafficking crime) and to 60 months on the third count (possession of a firearm in a school zone) with the sentences to be served consecutively.

Cruz argues that the district Court committed five errors when sentencing him. Four of these alleged errors are procedural.[6] The first three concern the court's calculation of the guideline sentencing range (GSR) relevant to the first two counts. Cruz argues that, in calculating the GSR, the court: (1) failed to make an individualized finding regarding the drug quantity attributable

---

have explained that "the foundation requirements of 613(b) <u>do not</u> require that the witness be confronted with the statement while on the witness stand, but rather, only that the witness be available to be recalled in order to explain the statement during the course of the trial." <u>United States</u> v. <u>Hudson</u>, 970 F.2d 948, 955 (1st Cir. 1992) (emphasis supplied).

[6] Examples of procedural errors include: "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." <u>Gall</u> v. <u>United States</u>, 128 S. Ct. 586, 597 (2007).

to him or foreseeable by him,[7] (2) erroneously found that he possessed a firearm while part of the drug trafficking conspiracy, and (3) erroneously found that he held a managerial or supervisory position in the conspiracy.[8]  The fourth alleged procedural error relates to the court's decision to make his sentence for possession of a firearm in a school zone (count three) consecutive to the sentence it imposed on the first two counts.  The court, he observes, had already enhanced his sentence on the first two counts because he possessed a firearm while part of the drug conspiracy. He contends that running the sentence on count three consecutively impermissibly "double counted" his possession of a firearm.  Cruz's final alleged error concerns the sentence itself, which Cruz argues is substantively unreasonable even absent procedural errors. Except for his second claim relating to possessing a firearm while part of a drug conspiracy, Cruz preserved these claims below.

The court arrived at Cruz's sentence as follows.  First, the court calculated the GSR for the first two counts.  Concluding that both counts involved substantially the same harm, the court grouped them.  See USSG § 3D1.2.  The court used the offense level

---

[7] Cruz also argues that the jury committed error when it failed to make an individualized finding under the applicable guidelines. Because this is not the jury's duty, we need not examine this argument any further.

[8] We note that at sentencing, a district court's factual findings must be supported by a preponderance of the evidence.  United States v. Morgan, 384 F.3d 1, 5 (1st Cir. 2004).

-17-

corresponding with count 1 because that count carried the highest offense level. Id. § 3D1.3. That offense level was 32, based on the drug amount the court assigned to Cruz -- at least five but less than fifteen kilograms of cocaine. Id. § 2D1.1(c). Next, the court added to the offense level: a two-level increase for selling drugs near a protected location, id. § 2D1.2(a)(1), a two-level increase for possession of firearms while part of the drug conspiracy, id. § 2D1.1(b)(1), and a three-level adjustment for managing or supervising a criminal activity with at least five participants, id. § 3B1.1(b). The resulting total offense level of 39 combined with a criminal history category of I to yield a sentencing range of 262-327 months. Second, the court considered Cruz's conviction on the third count -- possession of a firearm in a school zone in violation of 18 U.S.C. § 922(q). The court concluded that this conviction carried a maximum of 60 months' imprisonment. See 18 U.S.C. § 924(a)(4).

With the guideline and statutory sentences before it, the court then considered whether a non-guideline sentence with respect to the first two counts was appropriate. After examining the factors set forth in 18 U.S.C. § 3553(a), the court sentenced Cruz to 262 months' imprisonment on the first two counts, at the bottom of the GSR, and to 60 months' imprisonment on the third count. The sentences were to run consecutively. Upon reconsideration, however, the court concluded that penalizing Cruz twice for his

possession of a firearm -- first by enhancing his sentence on the first two counts because he possessed a firearm while part of the drug conspiracy (USSG § 2D1.1(b)(1)) and second by imposing a consecutive 60 month sentence because he possessed a firearm in a school zone (18 U.S.C. § 924(a)(4)) -- would result in impermissible double-counting.  To avoid this perceived double-counting problem, the court sentenced Cruz to a below-guideline sentence on the first two counts, 202 months, purposefully subtracting 60 months from the low end of the recommended GSR which was 262 months.  This, the court believed, made up for the 60 month sentence under 18 U.S.C. § 924(a)(4) which it then imposed consecutively.  After the dust cleared, Cruz faced a total of 262 months in prison.

The following standards of review govern our analysis of Cruz's claims.  His first three claims concern the district court's findings of fact at sentencing which we review for clear error where a claim is preserved.  United States v. Marks, 365 F.3d 101, 105 (1st Cir. 2004).[9]  Where unpreserved, the case with the second of these three claims, our review is for plain error.  United

---

[9] We will not find clear error unless "'on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed.'"  United States v. Brown, 298 F.3d 120, 122 (1st Cir. 2002) (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1986))(citations omitted).

States v. Ziskind, 471 F.3d 266, 270 (1st Cir. 2006).[10] Cruz's fourth claim of error concerns the district court's interpretation and application of the sentencing guidelines which we review de novo. United States v. Goodhue, 486 F.3d 52, 55 (1st Cir. 2007). Finally, we review the substantive reasonableness of Cruz's sentence for an abuse of discretion. DeCologero, 2008 U.S. App. LEXIS 13300, at * 71.

First, Cruz argues that the district court erred when it failed to make an individualized drug quantity finding. Instead, he asserts, the court erroneously shifted the drug quantity attributable to the conspiracy as a whole to him.

Where a defendant has been convicted of participating in a drug-trafficking conspiracy, a sentencing court must determine the specific quantity of drugs for which the defendant is responsible. United States v. Colon-Solis, 354 F.3d 101, 103 (1st Cir. 2004). The court may hold the defendant responsible for "drugs he personally handled or anticipated handling, and, under the relevant conduct rubric, for drugs involved in additional acts that were reasonably foreseeable by him and were committed in furtherance of the conspiracy." United States v. Sepulveda, 15

---

[10] We will not find plain error unless we find an error "that was plain, (i.e., obvious and clear under current law), prejudicial (i.e., affected the outcome of the district court proceedings), and that seriously impaired the fairness, integrity, or public reputation of the judicial proceedings." United States v. Griffin, 524 F.3d 71, 76 (1st Cir. 2008).

F.3d 1161, 1197 (1st Cir. 1993). When making the individualized finding of drug quantity responsibility, the court must not automatically shift the quantity attributable to the conspiracy as a whole to the defendant. Colon-Solis, 354 F.3d at 103.

Here, the district court, contrary to Cruz's contention, did make an individualized finding regarding drug quantity. The court concluded that Cruz was personally responsible for at least five but less than fifteen kilograms of cocaine. The court did not, as Cruz asserts, shift the conspiracy-wide amount to him.[11]

Although Cruz appears to contend only that the court failed to make any individualized finding regarding drug quantity, he does make various assertions in his brief that support an alternative argument: that if the court did make an individualized finding that its finding was clearly erroneous.

To the extent that this argument is not waived it fails on the merits. At trial, an expert witness from the Puerto Rico police department testified that the conspiracy on the whole sold cocaine at a rate of approximately 8.2 kilograms per year. Testimony from other witnesses established that Cruz operated his point as part of the project-wide conspiracy for over seventeen

---

[11] The jury found beyond a reasonable doubt that the conspiracy on the whole was responsible for the following quantities: one kilogram or more of heroin, five kilograms or more of cocaine, and 50 grams or more of cocaine base/crack cocaine. These quantities, under 21 U.S.C. § 841(b)(1)(A), triggered a statutory maximum extending to life imprisonment. See Perez-Ruiz, 353 F.3d at 15.

months, nearly a year and a half, and that he sold cocaine from his point during this period. Based on this evidence, we cannot say that the court's quantity finding was clearly erroneous. United States v. Santos, 357 F.3d 136, 140 (1st Cir. 2004) ("[E]ach coconspirator is responsible not only for the drugs he actually handled but also for the full amount of drugs that he could reasonably have anticipated would be within the ambit of the conspiracy."); see also United States v. Rodriguez, 525 F.3d 85, 107 (1st Cir. 2008) ("The trial court's determination of drug quantity . . . is not required to be an exact determination but rather only a reasoned estimate." (citation omitted)).

Second, Cruz argues that the district court erroneously found he possessed a firearm while part of the drug conspiracy. The court's finding, pursuant to USSG § 2D1.1(b)(1), resulted in a two-level increase in Cruz's offense level. Echoing an earlier argument, Cruz asserts that the government failed to present any evidence that he possessed a firearm and thus the court's finding lacked sufficient evidentiary support.

This argument is without merit. At trial, a cooperating witness testified that while Cruz was a drug point owner he possessed an automatic firearm and carried it with him while at the housing project. Further, at Cruz's sentencing hearing, his counsel acknowledged the propriety of the two-level enhancement at issue, noting that he was not presenting an argument concerning

"the feasibility of the evidence" underlying the enhancement. Accordingly, we discern no error, much less plain error.

Third, Cruz argues that the court erroneously found that he managed or supervised a criminal activity that involved at least five participants or that was "otherwise extensive." This finding resulted in a three-level upward adjustment pursuant to USSG § 3B1.1(b). Although Cruz admits to associating with people at the housing project, he argues that the government failed to present any evidence that he managed or supervised anyone.

There was no clear error. An upward adjustment is available under 3B1.1(b) if (1) the criminal scheme involved five or more participants (including the defendant) or was otherwise extensive and (2) the defendant was responsible for managing or supervising the activities of at least one of these participants. United States v. Gonzalez-Vazquez, 219 F.3d 37, 43-44 (1st Cir. 2000).[12] At trial, the government presented evidence that Cruz was involved in a drug distribution network that included well over five persons. It also presented evidence that Cruz was a drug point owner who employed several individuals to sell drugs for him, one of whom testified to this relationship at trial. This evidence is sufficient to support the adjustment.

---

[12] A defendant manages or supervises a person if he exercises control over that person or oversees that person's activities. See United States v. Cali, 87 F.3d 571, 578 (1st Cir. 1996).

-23-

Cruz's fourth argument is more complex.  He argues that the district court impermissibly "double counted" his possession of a firearm when it (1) enhanced his sentence on the first two counts because he possessed a firearm while part of the drug conspiracy and (2) imposed a consecutive 60-month sentence because he possessed a firearm in a school zone.  Cruz argues that USSG § 2K2.4 forbids this result.

The argument fails, as USSG § 2K2.4 is not applicable. Rather, it applies where a court is sentencing a defendant who has been convicted of violating either 18 U.S.C. § 924(c) or § 929(a). Those statutes punish, among other things, the possession of firearms in furtherance of either a crime of violence or a drug trafficking crime.  USSG § 2K2.4 directs courts sentencing a defendant pursuant to those statutes to adopt the five-year minimum sentence required by those statutes.  In order to avoid double counting, where a court has sentenced a defendant under § 2K2.4 in conjunction with sentencing the defendant for an underlying offense, the court must not apply any specific offense enhancement for possession, brandishing, use, or discharge of a weapon or firearm when calculating the sentence for the underlying offense. USSG § 2K2.4 (cmt. n.4) ("A sentence under this guideline accounts for any . . . weapon enhancement for the underlying offense of conviction."); see United States v. Harris, 959 F.2d 246, 266 (D.C.

Cir. 1992) (interpreting § 2K2.4's language in an earlier version of the guidelines and noting its goal of avoiding double counting).

Here, however, Cruz was convicted of violating neither 18 U.S.C. § 924(c) nor § 929(a). Thus, USSG § 2K2.4, according to its plain terms, is inapplicable. Further, and more importantly, no double counting occurred here. The court enhanced Cruz's first sentence because he possessed a firearm while part of a drug conspiracy and imposed a consecutive sentence under 18 U.S.C. § 924(a) because he possessed a weapon in a school zone. This is unlike the situation § 2K2.4 seeks to avoid -- a defendant effectively being penalized twice for possessing a firearm in connection with or in furtherance of a drug trafficking crime.

Despite the inapplicability of § 2K2.4, the district court appears to have accepted Cruz's double counting argument which he advanced at his sentencing hearing. The district court, endeavoring to avoid the perceived double counting problem, subtracted 60 months from the bottom of the GSR that was applicable to the first two counts. Although this action inured to Cruz's benefit, the government has not appealed the sentence. Ultimately, because any error by the court benefitted Cruz, we can dismiss this particular claim without further examination.[13]

---

[13] We also note that Cruz takes issue with the court's decision to enhance his offense level two levels pursuant to § 2D1.1(b)(1) (possession of firearm while part of a drug trafficking crime) and two levels pursuant to § 2D1.2(a)(1) (dealing drugs near a protected location). The court, he argues, could only apply one of

-25-

Finally, Cruz argues that, even assuming the district court made no procedural errors when arriving at his sentence, the sentence it imposed is substantively unreasonable. The sentence, in his view, is longer than what is needed to achieve the goals of sentencing.[14] This contention lacks merit. When explaining its sentencing decision, the court stated that the sentence it imposed, which was on the lower end of the GSR, reflected the need for both punishment and deterrence, would make Cruz a better citizen, and would facilitate his reintegration into society. On the record before us, we determine that the court acted well within its discretion in so concluding.

## 2. **Reyes**

On the sole count on which he was convicted -- conspiring to possess drugs with the intent to distribute -- the district court sentenced Reyes to 324 months' imprisonment and three years of supervised release. It imposed the federal sentence consecutive to an undischarged portion of a Puerto Rico prison sentence imposed on Reyes in 2004 for a number of criminal offenses.

Reyes argues that the district court committed two procedural errors when sentencing him. First, like Cruz, Reyes

---

these enhancements. Cruz fails to offer any support for this argument and thus it is waived. Zannino, 895 F.2d at 17.

[14] Cruz also argues that his sentence was unreasonable because the court failed to consider the factors listed in 18 U.S.C. § 3553(a) when arriving at his sentence. The court's sentencing decision, however, reflects such consideration.

-26-

argues that when calculating his GSR the district court failed to make an individualized finding regarding the drug quantity attributable to, or foreseeable by, him.  Second, he argues that the court erred in refusing to apply USSG § 5G1.3(b) and order that his federal sentence run concurrently with the undischarged portion of his 2004 state sentence.  Reyes received the 70-year state sentence after being convicted of illegal possession of a weapon, robbery, and attempted murder.  These convictions, unrelated to the conspiracy at issue here, stemmed from Reyes's robbery of two individuals.  Reyes contends that the district court should have run his federal and 2004 state sentences concurrently, because the court used one of the convictions underlying the state sentence -- illegal possession of a weapon -- when determining his offense level for the federal offense.  Because neither claim of error was presented below, our review is for plain error.  See Goodhue, 486 F.3d at 55 ("Appellate review of a forfeited claim is for plain error only.").

The district court arrived at Reyes's sentence as follows.  First, it calculated the offense level for the count of conviction.  The court established a base offense level of 32 (based on drug quantity) and added levels for selling drugs within 1000 feet of a public housing facility or public school (two-level increase), see USSG § 2D1.2(a)(1), and for possession of a firearm during a drug trafficking crime (two-level increase), id. §

-27-

2D1.1(b)(1).  The resulting total offense level was 36.  Second, the court concluded that Reyes had a criminal history category of VI based on his convictions in 1999 and 2004 for a number of criminal offenses.  An offense level of 36 in combination with a criminal history category of VI yielded a GSR of 324-405 months. The district court sentenced Reyes to 324 months' imprisonment, running the federal sentence consecutively with the undischarged portion of a state sentence imposed in 2004.

Reyes first claims that the court failed to make an individualized drug quantity finding.  In doing so, he ignores the court's finding at sentencing that Reyes was "reasonably responsible" for at least five kilograms but less than fifteen kilograms of cocaine.[15]

Like Cruz, Reyes presents facts that appear to support an alternative argument.  Reyes notes that he left the housing project in 2002.  This, we interpret, is Reyes's attempt to argue that the court's individualized quantity finding is plainly erroneous because it assumes his presence at the project through mid-March 2003 -- the conspiracy's end date.  Though we could treat this undeveloped argument as waived, we can just as easily dispose of it on the merits.  As we noted earlier, an expert witness testified

---

[15] Again, we note that the jury's verdict did not put a ceiling on quantity.  The jury found beyond a reasonable doubt that the conspiracy on the whole was responsible for:  one kilogram or more of heroin, five kilograms or more of cocaine, and 50 grams or more of cocaine base/crack cocaine.

that the conspiracy on the whole sold cocaine at a rate of approximately 8.2 kilograms per year. Reyes does not argue that he was not part of the conspiracy from its start date -- mid-September 2001. Accordingly, we conclude that the court's finding that Reyes was responsible for at least five but less than fifteen kilograms of cocaine is not plainly erroneous. See Rodriguez, 525 F.3d at 107.

Next, Reyes argues that under USSG § 5G1.3 the court should have run the federal sentence concurrently with the undischarged portion of his state sentence rather than consecutively because it used his state conviction for illegal possession of a weapon when calculating his offense level. The court used this conviction, he argues, when it increased his base offense level by two levels because he possessed a firearm while part of a drug conspiracy. See USSG § 2D1.1(b)(1)

This argument is a non-starter. Section 5G1.3(b) requires that an undischarged sentence run concurrently with the sentence for the instant offense "only where the undischarged sentence was (1) for a crime that constitutes relevant conduct for the instant offense and (2) was the basis for an increase in the offense level for the instant offense under Chapters Two or Three of the Guidelines." United States v. Lino, 493 F.3d 41, 44 (1st Cir. 2007) (emphasis added). The second condition is not met

here.[16]   Despite Reyes's argument to the contrary, the state conviction for illegal possession of a weapon was <u>not</u> the basis for the increase in his offense level.   Rather, the court increased Reyes's offense level because numerous witnesses testified that Reyes possessed a firearm while part of the drug conspiracy. Reyes's state conviction for illegal possession of a weapon, moreover, stemmed from an event entirely unrelated to the conspiracy, specifically, Reyes's robbery and attempted murder of two individuals. Accordingly, the court did not commit error let alone plain error in imposing consecutive sentences.[17]

### III.  Conclusion

Based on the reasons provided above, we affirm both convictions and sentences.


**AFFIRMED**.

---

[16] Although we doubt the first condition is met here either, there is no need to address it.

[17] Reyes argues that even if the court was not required to impose a concurrent sentence, it nevertheless enjoyed the discretion to do so under USSG § 5G1.3(c).  The court's refusal to exercise this discretion, especially where Reyes himself failed to seek a concurrent sentence, does not constitute plain error.