# United States Court of Appeals
## For the First Circuit

No. 08-2002

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID WONG TROY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Howard, Ripple* and Selya,
Circuit Judges.

Richard L. Hartley, with whom Law Office of Richard Hartley was on brief, for appellant.
Renèe M. Bunker, Assistant United States Attorney, with whom Paul D. Silsby, United States Attorney, was on brief, for appellee.

September 25, 2009

*Of the Seventh Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**. In April 2008, a jury convicted the appellant, David Wong Troy, of assaulting a federal officer in violation of 18 U.S.C. § 111(a), which imposes criminal liability on one who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes" with a designated federal officer who is "engaged in . . . the performance of official duties." During the trial, Troy timely moved for a judgment of acquittal, arguing that the evidence was insufficient to prove beyond a reasonable doubt that the relevant federal officer had been engaged in the performance of official duties at the time of the assault. The district court denied the motion, the jury returned a guilty verdict, and Troy appeals. Because a rational factfinder could have concluded beyond a reasonable doubt that the officer was acting within the scope of her official duties for purposes of the statute, we affirm.

## I. BACKGROUND

As the facts presented here are relevant only to Troy's claim of insufficient evidence, we present them in the light most favorable to the jury's verdict. United States v. Cruz-Rodriguez, 541 F.3d 19, 25-26 (1st Cir. 2008).

In November 2007, Troy, a United States citizen, entered the public lobby (the "passenger processing area") of an inspection building operated by the United States Customs and Border

Protection ("CBP") component of the Department of Homeland Security in Calais, Maine, apparently seeking to file a complaint relating to a prior interaction with CBP officers. As Troy entered the building, CBP Officer Richard Baker, who described the look on Troy's face as "tense," acknowledged him by asking, "May I help you?" Troy paused momentarily to look at Officer Baker, but, intent on speaking to a supervisor, he ignored the question and walked directly towards the supervisor's office.

The supervisor's office was located behind a counter, although there was no sign or other explicit indication that the office was off limits to the public. CBP Officer Martha Beckett, who was in uniform at the time, was seated near the supervisor's office. She did not recognize Troy, and Troy did not identify himself to her. As Troy approached the supervisor's door, Officer Beckett told Troy that he was not permitted to enter the supervisor's office. Troy continued another foot or so, stopped, turned around, and walked back through the passenger processing area towards the exit leading both to a cargo area and to United States soil.

In order to investigate the circumstances of Troy's attempt to enter a restricted area and to ascertain Troy's right to enter the United States, Officer Beckett followed Troy towards the exit and instructed him to stop. Troy ignored her and continued. Concerned that perhaps Troy did not speak English or otherwise did

not understand her command, and in an attempt to gain his attention and redirect him, Officer Beckett reached out and touched Troy lightly on the arm. Troy pulled away, turned, and pushed Beckett into a nearby counter. Multiple CBP officers responded to Troy's action by subduing and restraining him as he kicked and otherwise resisted. The next day, Troy was charged with two counts of assaulting a federal officer.[1]

During the one-day trial, the government introduced evidence to establish that Officer Beckett was engaged in the performance of official duties at the time of the altercation. Various CBP officers testified to the missions and duties of CBP officers working at the Port of Entry in Calais. Supervisory CBP Officer Timothy Corbett testified that CBP officers are expected to determine whether people and conveyances entering the country are allowed to enter and are properly documented. Included in these duties is interacting with people who enter the passenger processing area. Some of those are pedestrians attempting to enter the United States. Others are vehicle occupants who have been asked to enter the passenger processing area for a more detailed inspection than is possible in the vehicle lanes outside the building. In addition to the inspection duties identified by Officer Corbett, CBP Officer Richard Baker and Officer Beckett

---

[1]The jury acquitted Troy of the second count, which alleged an assault against Officer Baker in connection with the same incident. That count is not at issue in this appeal.

testified that the officers are also responsible for ensuring the security of the inspection building and the area around it, a duty that includes inquiring about the activities of people walking near the border.

Officers Corbett, Baker and Beckett further testified to the procedures they generally follow in the passenger processing area. Officer Corbett testified, "[I]f a person walks in there, we assume that that person has just come from Canada and is seeking admission." He stated that the officers in the inspection building are expected to determine each person's citizenship and eligibility to enter the United States, although he noted that when a person shows a United States passport, the inspection is often very short. Officers Baker and Beckett corroborated this account, testifying that because the area is part of the border inspection operation, they treat people who enter the passenger processing area as arriving aliens until those persons prove to the inspecting officer that they are eligible to enter the United States. The reason for this approach, according to Officers Baker and Corbett, is that people who are seeking admission are not always escorted into the passenger processing area by CBP officers, and therefore it is often impossible to distinguish them from United States citizens who enter from United States soil for the purpose of asking questions. Consequently, the officers presume that each person entering the passenger processing area is an arriving alien. The

testifying officers also noted that, with respect to United States citizens, they often forgo an extensive inspection if a simple, interview-style examination satisfies them of the person's right to enter the United States. Finally, Officers Corbett, Baker, and Beckett testified that one factor they consider when attempting to discern a person's reason for being in the passenger processing area is the person's refusal to answer simple questions. When this occurs, the officers testified, the person is typically detained until the officers can determine the person's identity and admissibility.

The jury also heard testimony from CBP Officer Geoffrey Catlett, an instructor in the use of force, as well as testimony from Officers Baker and Beckett, describing the training CBP officers receive about how to deal with a person who does not comply with an officer's verbal commands at the border. They each testified that they had been instructed first to present respectful verbal commands, and if those are ignored, to escalate to "soft techniques" such as physically touching the person in question to get the person's attention, or applying an "escort hold" or a "come-along hold" to physically guide the person to an area.

At the close of the evidence, Troy moved for a judgment of acquittal under Federal Rules of Criminal Procedure 29(a), based on his contention that the prosecution had failed to show that Officer Beckett was engaged in the performance of official duties

at the time of the assault.  See Fed. R. Crim. P. 29(a) ("After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.").  The district court denied the motion, concluding that there was "evidence sufficient to allow the matter to proceed to the jury."  As an alternative basis for the motion, Troy had also argued that the officers' conduct in stopping him and refusing to allow him to exit the passenger processing area had exceeded their authority as federal officials; the district court rejected this argument, too, citing United States v. Flores-Montano, 541 U.S. 149 (1975), for the proposition that federal agents enjoy expansive authority to conduct searches at the border. See id. at 152-53 ("[S]earches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." (quoting United States v. Ramsey, 431 U.S. 606, 616 (1977))).

Ultimately, the trial court charged the jury, explicitly noting in its instructions that the government was required to prove that Officers Beckett and Baker were "engaged in the performance of their official duties," and defining "official duties" as "acting within the scope of his or her employment at the

-7-

time of the events giving rise to this charge." The jury convicted Troy as to the assault on Officer Beckett, and he was sentenced to one year of probation.[2] Troy now appeals the district court's denial of his motion for a judgment of acquittal, raising just one issue: the sufficiency of the evidence to prove that Officer Beckett was engaged in the performance of her official duties.

## II. DISCUSSION

Because Troy moved for a judgment of acquittal on sufficiency grounds, we review the district court's denial of that motion de novo. Cruz-Rodriguez, 541 F.3d at 26. As noted earlier, we examine the evidence, both direct and circumstantial, in the light most favorable to the jury's verdict. Id. "We do not assess the credibility of a witness, as that is a role reserved for the jury." United States v. Paret-Ruiz, 567 F.3d 1, 5 (1st Cir. 2009). Nor need we be convinced that the government succeeded in "eliminating every possible theory consistent with the defendant's innocence." United States v. Moran, 312 F.3d 480, 487 (1st Cir. 2002). Rather, we must decide "whether that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime." Cruz-Rodriguez, 541 F.3d at 26

---

[2]Troy also received a mandatory $25 special assessment pursuant to 18 U.S.C. § 3013.

(<u>citing</u> <u>United States</u> v. <u>Perez-Ruiz</u>, 353 F.3d 1, 7 (1st Cir. 2003)); <u>see also</u> <u>United States</u> v. <u>Carroll</u>, 105 F.3d 740, 742 (1st Cir. 1997).

Although we have not yet had occasion to limn the contours of the phrase "engaged in . . . the performance of official duties" in 18 U.S.C. § 111(a), those circuits that have considered the phrase are unanimous in the view that whether a federal officer is so engaged "does not turn on whether the law being enforced is constitutional or applicable to the defendant, or whether the levy order being enforced was validly obtained; rather it turns on whether the federal officer is 'acting within the scope of what [he] is employed to do . . . or is engaging in a personal frolic of his own.'" <u>United States</u> v. <u>Streich</u>, 759 F.2d 579, 584 (7th Cir.), <u>cert. denied</u>, 474 U.S. 860 (1985) (<u>quoting</u> <u>United States</u> v. <u>Heliczer</u>, 373 F.2d 241, 245 (2d Cir.), <u>cert. denied</u>, 388 U.S. 917 (1967)); <u>see also</u> <u>United States</u> v. <u>Juvenile Female</u>, 566 F.3d 943, 949-50 (9th Cir. 2009); <u>United States</u> v. <u>Colbert</u>, 70 F.3d 1263, 1995 WL 703546, at *1 (4th Cir. 1995) (table); <u>United States</u> v. <u>Street</u>, 66 F.3d 969, 978 (8th Cir. 1995); <u>United States</u> v. <u>Clemons</u>, 32 F.3d 1504, 1507 (11th Cir. 1994), <u>cert. denied</u>, 514 U.S. 1086 (1995); <u>United States</u> v. <u>Lopez</u>, 710 F.2d 1071, 1074 (5th Cir. 1983); <u>United States</u> v. <u>Cunningham</u>, 509 F.2d 961, 964 (D.C. Cir. 1975); <u>United States</u> v. <u>Linn</u>, 438 F.2d 456, 458 (10th Cir.

1971); Arwood v. United States, 134 F.2d 1007 (6th Cir.), cert. denied, 319 U.S. 776 (1943).

Whatever ambiguity may exist at the margins of the distinction between conduct within the scope of an officer's employment and a personal frolic, that ambiguity does not touch this appeal: plainly a rational factfinder, viewing the evidence in the light most favorable to the jury's verdict, could have concluded beyond a reasonable doubt that Officer Beckett was engaged in the performance of her official duties when Troy assaulted her. Officer Beckett was in uniform and at her place of work. She confronted Troy in an attempt to keep order in the passenger processing area, as he was walking into a restricted area and had ignored Officer Baker. She pursued Troy across the passenger processing area to ascertain the reasons for his behavior, and also to determine whether Troy was admissible into the United States. And her escalation of the confrontation from verbal command to physical contact conforms precisely to the training she had received instructing her how to behave as a CBP Officer towards uncooperative individuals. Moreover, her conduct was entirely consistent with her dual missions of inspecting individuals at the border and maintaining the security of the inspection building. In the face of this evidence, a rational factfinder could easily have concluded beyond a reasonable doubt that Officer Beckett's conduct fit comfortably within the scope of

-10-

what she was employed to do, and that she had not crossed the line to personal frolic.

Troy's appellate arguments to the contrary are unpersuasive. His claim that Officer Beckett's decision to stop him from exiting the inspection building was an unconstitutional seizure in derogation of the Fourth Amendment is beside the point, for the inquiry into whether Officer Beckett was engaged in the performance of her official duties does not turn on the precise limits of her authority, but rather on the proper characterization of her conduct as official or personal.[3] See Streich, 759 F.2d at 584.

Similarly, Troy's argument that he should not have been subject to any kind of examination at all -- because he had not crossed the border but instead had entered the inspection building from United States soil -- again only raises an argument about the scope of Officer Beckett's authority. It does not cast doubt on the official nature of her actions. This is particularly so in

_____

[3]Even if the scope of Officer Beckett's "official duties" for purposes of the statute were limited to conduct within her constitutional authority -- and it is not -- we think it very likely that Officer Beckett would have had reasonable suspicion to conduct an investigative stop, especially given the broad authority of federal agents to conduct searches at the border, see Flores-Montano, 541 U.S. at 152-53: she was confronted with an unidentified man with a tense look on his face who had entered the inspection building at an international point of entry, refused to respond to questions and commands of CBP officers, proceeded (however briefly) into a restricted area, and was attempting to leave the building. See generally Terry v. Ohio, 392 U.S. 1 (1968).

light of the record evidence showing that Officer Beckett did not know that Troy was a United States citizen and that she did not know that he had entered the inspection building from United States soil.

Nor do Troy's arguments deal with the record evidence that Officer Beckett stopped him not only for examination, but also to maintain the order and safety of the passenger processing area.[4] Finally, Troy's suggestion, largely implicit, that Officer Beckett stopped him because of a grudge against him for his prior complaints against CBP officers contradicts Officer Beckett's testimony as to her own motivations, and it is not our role to reassess the credibility of that testimony. Paret-Ruiz, 567 F.3d at 5.

**AFFIRMED.**

---

[4]The district court noted that "if Mr. Troy had come into the port of entry here, said he was an American citizen, [and] identified himself, that the facts would be markedly different and the legal resolution might be different." This hypothetical scenario, however, is not before us.