HOWARD, Circuit Judge
(concurring in part and dissenting in part).
The majority’s framework for deciding these cases relies on circuit precedent that I doubt can be reconciled with the usual mode, after Griffin v. United States, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), of analyzing convictions on indictments alleging multiple-object conspiracies. Even under my respected colleagues’ framework, there was sufficient evidence to convict Szpyt if not Dellosantos.
I.
In Griffin, a defendant was charged in a single count with conspiracy to defraud the government by means of two objects. Id. at 47, 112 S.Ct. 466. At trial the government linked the defendant to one object but not the other. Id. at 48, 112 S.Ct. 466. The jury convicted in a general guilty verdict. Id. The Supreme Court affirmed the conviction: It held that a general guilty verdict on a dual-object conspiracy charge *127 must stand as long as the evidence is adequate to support conviction as to one of those objects, even if the evidence is inadequate as to the other. Id. at 48-52, 112 S.Ct. 466.
We have applied Griffin and upheld general guilty verdicts in single-count, multiple-object conspiracies in a variety of contexts. For example, in United States v. Mitchell, the defendant challenged his conviction under a single count for conspiracy to violate (1) the arson statute, and (2) the wire-fraud statute. 85 F.3d 800, 809 (1st Cir.1996). Among other things, the defendant argued that there was insufficient evidence to prove the wire-fraud object of the conspiracy. Id. at 811. We rejected that argument, however, based on Griffin and the defendant’s failure to contest the sufficiency of the evidence as to the other object of the conspiracy. Id.; see also United States v. Gerhard, 615 F.3d 7, 30 (1st Cir.2010), cert. denied sub nom. Riley v. United States, — U.S.-, 131 S.Ct. 1536, 179 L.Ed.2d 349 (2011); United
States v. Capozzi, 486 F.3d 711, 718-19 (1st Cir.2007).
Similarly, the indictment here charged a single conspiracy to violate a narcotics statute by means of two objects: (1) distributing cocaine; and (2) distributing marijuana. As I read Griffin and our case law, it seems to me that the government’s burden at trial was to prove that a conspiracy to distribute narcotics existed, and to tie each defendant to the agreement to distribute one or more of the drugs involved in that conspiracy; that is, either cocaine or marijuana or both. At least that is how several other circuits have read Griffin in cases like this one,[19] and this approach flows logically from the settled law that a general verdict on a multiple-count indictment will stand even if some counts were not proved and that charges leveled in the conjunctive need only be proved in the disjunctive.[20]
But the government has to make the argument to benefit from it. Here, the *128 government does little more than cite the relevant authority. It makes no meaningful attempt to explain how that authority applies in these cases, its effect (if any) on variance analysis, or whether the jury charge (and the government’s failure to object) limits its application in these cases, not to mention potential issues in sentencing based on a general guilty verdict when multiple drugs are involved. Answers to those questions are not obvious, especially in light of our precedent relied on by the majority. And we cannot do the government’s homework, even if the government may be on to something. United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990).
II.
That issue aside, my colleagues reach the wrong result in any event, at least for Szpyt. In Szpyt’s brief, he flatly admits to the cocaine scheme; and the evidence adduced at trial showed that he was not only aware of — but directly benefitted from— the marijuana scheme. An entry in San-born’s ledger reflected that Szpyt accepted a half-pound of marijuana in lieu of $750 toward the balance of Sanborn’s cocaine debt. That transaction was confirmed at trial by Sanborn’s wife. The majority says that this one-time payment of a half-pound of marijuana is “merely a barter of goods.” Ante, at 123. I find that characterization peculiar in a narcotics case. But in any event the majority’s criticism misses the point: a single transaction in the context of other evidence suggesting a joint undertaking can prove tacit agreement. United States v. Moran, 984 F.2d 1299, 1303 (1st Cir.1993).
And here the evidence did suggest that Szpyt played some role in the marijuana undertaking. For example, in one recorded call, Szpyt relayed to Dellosantos the details of Sanborn’s arrest for a “weed deal” and bemoaned that “I can only police my fucking guys so much.” The statement, which the jury easily could have concluded was tongue-in-cheek, implies not only that he knew about marijuana distribution, but also that he exercised at least some measure of control over it, although in his view not enough. The inference makes sense in light of Szpyt’s leadership position over gang members distributing marijuana in Maine, and the fact that he owned the clubhouse in Old Orchard Beach where they met. Even if that is not the only inference the jury could have drawn, it is certainly plausible and at this stage we must draw all such inferences in favor of guilt. United States v. Cruz-Rodríguez, 541 F.3d 19, 26 (1st Cir.2008).
On top of this, the evidence indicated that Szpyt possessed some quantity of marijuana. Following a meeting between Szpyt and Dellosantos, police acting in cooperation with federal authorities pulled over Dellosantos’ van for a traffic violation. The officers observed Szpyt drive past the stopped vehicle several times. In a recorded call at about the same time, Szpyt called home and exhorted his daughter to hide the “big bag” of “pot.” The majority says that Szpyt’s cache of marijuana could have been for his personal consumption. Perhaps they are right. But viewing all the evidence together (and not each piece separately and in isolation as the majority does), and in light of the deference that our precedent requires, I believe that the jury was free, although not compelled, to convict Szpyt.
So I respectfully dissent in case no. 09-2670. But I have sincere doubts that the result in either case is correct.

. United States v. Calle, 120 F.3d 43, 44 (5th Cir.1997), cert. denied, 523 U.S. 1012, 118 S.Ct. 1202, 140 L.Ed.2d 330 (1998); United States v. Henry, 71 Fed.Appx. 493, 499-500 (6th Cir.2003) (per curiam), cert. denied sub nom., Rosenboro v. United States, 540 U.S. 1134, 124 S.Ct. 1111, 157 L.Ed.2d 939 (2004); United States v. Vaziri, 164 F.3d 556, 566-67 (10th Cir.1999), cert. denied sub nom., Quarterman v. United States, 533 U.S. 923, 121 S.Ct. 2536, 150 L.Ed.2d 705 (2001); United States v. Barnes, 158 F.3d 662, 672 (2d Cir.1998); accord United States v. Banks, 10 F.3d 1044, 1054-55 (4th Cir.1993) (same, but without citing Griffin), cert. denied sub nom., Blow v. United States, 511 U.S. 1090, 114 S.Ct. 1850, 128 L.Ed.2d 475 (1994).

. The majority attempts to distinguish Griffin as follows: “the defendant in Griffin had agreed to the dual-object single conspiracy that was charged, thus a finding that the defendant had participated in one of this conspiracy’s objectives was enough to sustain the conviction.” Ante, at 126 n. 18. But that statement merely begs the question. In Griffin, the proof failed to establish that the defendant was even aware of one of the two objects of the conspiracy, see 502 U.S. at 48, 112 S.Ct. 466, a critical fact that the lower court’s decision had made crystal clear. United States v. Beverly, 913 F.2d 337, 348, 360 (7th Cir.1990), aff'd, Griffin, 502 U.S. 46, 112 S.Ct. 466 (recognizing that there was "no proof that [Ms. Griffin] knew Mr. Beverly was a drug dealer” but affirming her conviction anyway because she participated in the conspiracy's other object). Thus, the defendant could not have agreed to both objects of the dual-object single conspiracy in Griffin. Moreover, our precedent applying Griffin has never required that a defendant agree to both objects in order to sustain a conspiracy conviction. Indeed, in Mitchell, this court rejected the defendant’s plaint that "the Government was allowed to argue a 'grab bag’ of theories and ask the jury to guess as to which agreement Mitchell contemplated” because under Griffin “the jury could find Mitchell guilty on Count I if the government proved either of the objects of the conspiracy.” Mitchell, 85 F.3d at 810 (emphasis supplied).