**UNITED STATES, Appellee,**

v.

**Eduardo ROBINSON–MUNOZ, Defendant, Appellant.**

**UNITED STATES, Appellee,**

v.

**Lazaro PEREZ–REDONDO, Defendant, Appellant.**

**Nos. 91–1467, 91–1484.**

United States Court of Appeals, First Circuit.

Heard March 5, 1992.

Decided April 9, 1992.

Carlos R. Noriega, by Appointment of the Court, for defendant, appellant Robinson–Munoz.

Olga M. Shepard, by Appointment of the Court, for defendant, appellant Perez–Redondo.

Rosa Emilia Rodriguez Velez, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., was on brief for appellee.

Before BREYER, Chief Judge, FEINBERG,* Senior Circuit Judge, and SELYA, Circuit Judge.

FEINBERG, Senior Circuit Judge:

Lazaro Perez Redondo (Perez) and Eduardo Robinson Munoz (Robinson) appeal from judgments of conviction for aiding and abetting the possession, with intent to distribute, of marijuana aboard a vessel, 46 U.S.C.App. § 1903(a), (c)(1)(A) & 18 U.S.C. § 2, after a jury trial in the United States District Court for the District of Puerto Rico, Jose Antonio Fuste, J. Both appellants were sentenced to 120 months imprisonment to be followed by five years supervised release. Appellants were tried with another defendant, Alberto Saban Gutierrez (Saban). The captain of the vessel pled guilty before appellants' trial. Appel-

* Of the Second Circuit, sitting by designation.

lants claim that: the district court erred in admitting the inculpatory statement of co-defendant Saban; the district court's instructions with regard to that statement were insufficient; the government presented insufficient evidence to prove that appellants knew the vessel was transporting marijuana; and the government presented insufficient evidence that it had jurisdiction over the vessel. For the reasons set forth below, we affirm.

## I. Background

The facts presented at trial, viewed in the light most favorable to the jury's verdict, were as follows. In October 1990, the United States Coast Guard intercepted a 35-foot wooden vessel named the Delfin about 90 miles north of Colombia. Over the radio, the captain of the Delfin claimed the vessel was Colombian but said that he had no papers on board. As the Coast Guard boarding party approached the Delfin, which had no flag or home port on its bow, they detected the strong smell of marijuana.

On board, the Coast Guard officers seized 114 bales of marijuana, which had an approximate weight of 2,178 kilograms. The marijuana was in plain view all over the vessel. Appellants' clothing, food and cooking equipment were found on top of and adjacent to the bales of marijuana. Although no fishing gear was found aboard the vessel, two branches had been placed on the sides of the boat to make it appear that the crew members were fishing.

After a search of the Delfin failed to produce any papers belonging to the vessel and the Colombian government informed the Coast Guard by radio that the Delfin was not registered in Colombia, the Coast Guard officers seized the Delfin as stateless. The officers thereafter arrested appellants, Saban and the captain. Petty Officer Villamil read them the Miranda warnings in Spanish and they said they understood. The officers then transferred the crew members to a Coast Guard cutter.

The next day, when Villamil took Saban to the bathroom, Saban started crying. Villamil asked him why he was crying and Saban answered that he was crying about his family. Villamil told Saban to "take it easy." According to Villamil, Saban then stated that he was crying because "he talked to his wife before about trafficking, and she said, 'I prefer to go hungry.' And he said that he had to do this because he didn't have a job and he wanted to feed his family."

At trial, appellants objected to the admission of this statement. Outside the presence of the jury, Villamil testified as to Saban's statement and counsel for all three defendants examined Villamil. Judge Fuste then decided to admit the statement. Immediately after Villamil testified in the jury's presence as to Saban's statement, Judge Fuste instructed the jury that "the statement that you have heard was given by Mr. Saban, according to the testimony of this witness, and if that is so, it only applies to Mr. Saban and not to the other defendants, of course." No one objected to the court's instruction. In his charge to the jury at the close of the evidence, the district judge referred to "any statement claimed to have been made by one of the defendants outside the Court, and after the alleged offense was committed," and instructed the jury that "any such statement should not be considered in any way whatsoever as evidence with respect to any other defendant now before you." No objection was made to this portion of the charge.

Neither appellant Perez nor appellant Robinson testified. They presented the testimony of the captain of the Delfin, Abel Rojas. Rojas testified that he hired the crew members, who were fishermen from a very small town, to work on a boat for four or five days and told them that he was thinking about going to the island of Bonita. He never told them what cargo they would be transporting. Rojas explained that the individual who hired him told him that the crew members should not know anything about what the boat was carrying. Rojas picked up the crew members at night and they boarded a speedboat that took five or six hours to reach the Delfin. Rojas stated that the marijuana sacks on

the boat were behind a wall and could not be seen. He also said that the marijuana was double wrapped in plastic and burlap and no odor of marijuana could be perceived.

Rojas testified that if the crew had known of the marijuana, he would have made the decision to throw all of it overboard. In addition, he stated that when the Coast Guard officers boarded the vessel, he told them that he had marijuana on board but that his crew knew nothing about it. On cross-examination, Rojas admitted to having a prior federal conviction for possession of marijuana with intent to distribute. Rojas also admitted on redirect that "[p]erhaps I let [the crew members] think that it could be at a moment, a smuggling trip, but I didn't tell them correctly that it was the contraband transport of whiskey or appliances."

Saban testified on his own behalf. Saban stated that he did not realize that the boat was carrying marijuana until Rojas informed the Coast Guard officers of that fact when they boarded the boat. He denied making any admissions to Officer Villamil about trafficking. On cross-examination, Saban admitted that he thought that the trip might have been for smuggling whiskey or cigarettes. The jury found Perez and Robinson guilty as charged, and the district court sentenced them in April 1991. These appeals followed.[1]

## II. Discussion

### A. *Admissibility of Saban's Statement*

■ Appellants Perez and Robinson contend that the district court erred in admitting co-defendant Saban's inculpatory statement allegedly made to Officer Villamil. They argue that the district judge

should have assured himself that Saban had understood his right to refuse to answer any questions and that Villamil should have advised Saban of his rights again before talking to him. The government correctly points out that the privilege against self-incrimination is personal to a defendant. See *Moran v. Burbine,* 475 U.S. 412, 433 n. 4, 106 S.Ct. 1135, 1147 n. 4, 89 L.Ed.2d 410 (1986). Therefore, a co-defendant cannot object to the admission of a confessing defendant's inculpatory statement on the ground that the confessing defendant's Fifth Amendment rights were violated. Accordingly, appellants cannot object on that ground to the admissibility of Saban's statement.[2]

■ Appellants also argue that Saban's statement was unduly prejudicial because the jury probably assumed that if one of the crewmembers knew that the Delfin was transporting marijuana, the other two crewmembers must have known as well. Therefore, they maintain, the statement was more prejudicial than probative and should have been excluded under Fed. R.Evid. 403. Appellants did not explicitly object to the statement based on Rule 403 at trial although counsel for Robinson, objecting on behalf of Robinson and Perez, stated that "we are trying this case with the three [defendants] together and we would oppose that type of statement as to my client." Counsel for appellants thereafter only pursued their objection to Saban's statement on Fifth Amendment grounds. Accordingly, the district court did not make an explicit ruling based on Rule 403 considerations. Nevertheless, we note that Saban's statement did not refer to appellants in any way. Moreover, the district court immediately gave a curative instruction that the statement should only

1. The jury also found Saban guilty. Before Saban was sentenced, however, the district court granted him a new trial based on newly discovered evidence of his limited mental capacity. The government appealed from the new trial order, but in January 1992 we affirmed the order in an unpublished opinion. *United States v. Saban-Gutierrez,* 961 F.2d 1565 (1st Cir.1992). The retrial is scheduled to commence shortly.

2. Of course, in an appropriate case, a defendant may have a valid objection to a co-defendant's

statement based on the Confrontation Clause. In this case, Saban did testify, was available for cross-examination, denied making the inculpatory statement to Villamil and proceeded to testify favorably to appellants. Thus, appellants' rights under the. Confrontation Clause were not violated. See *Nelson v. O'Neil,* 402 U.S. 622, 629–30, 91 S.Ct. 1723, 1727, 29 L.Ed.2d 222 (1971).

be considered as to Saban and repeated this instruction in the jury's final charge. Under the circumstances, we find that the district court did not abuse its discretion in admitting the statement, especially in light of the curative instruction. See *United States v. Wood*, 924 F.2d 399, 401 (1st Cir.1991). We further note, as the government informs us and appellants do not dispute, that before trial appellants were provided with a copy of Villamil's statement containing Saban's admission. Despite having this information, appellants did not move for a severance.

■ Appellants claim that the district court's instruction should have been given prior to Villamil's testimony as to Saban's statement and that the instruction was insufficient because it did not explain why the statement should only be applied to Saban. As noted above, appellants failed to object to the court's instruction at the time it was given and also failed to object to that portion of the court's final charge which reiterated the instruction. At the completion of the charge to the jury, appellants did request "a special instruction" regarding Saban's admission but the court properly responded that it had already given such an instruction in its charge. In the absence of an objection to the court's instructions, we review the instructions only for plain error. See *United States v. Campbell*, 874 F.2d 838, 841 (1st Cir.1989). We do not think that the district court was required to explain why Saban's statement could not be used against appellants and we note that the instruction was clear and a correct statement of the law. We therefore find that the instruction certainly did not amount to plain error.

■ As a last attack with regard to Saban's statement, appellants argue that they are entitled to a reversal and a new trial because of the district court's determination after trial that Saban's mental capacity was so limited as to justify a new trial for him. See supra note 1. Appellants claim that they should now have the opportunity to present evidence of Saban's limited mental capacity to the jury. The argument is without merit. As already discussed, the jury was adequately instructed during appellants' trial that Saban's statement should only be considered as evidence against Saban and therefore Saban's perceived mental state had no bearing on the outcome of appellants' trial.

## B. *Sufficiency of the Evidence*

■ Appellants maintain that the government presented insufficient evidence to prove their knowledge that the Delfin was transporting marijuana. They argue that the government only established their presence aboard the boat and that, as uneducated fishermen, they did not find anything suspicious about the boat. It is well-settled that we must "assess the sufficiency of the evidence as a whole, including all reasonable inferences, in the light most favorable to the verdict, with a view to whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Batista-Polanco*, 927 F.2d 14, 17 (1st Cir.1991).

We find that the government presented sufficient evidence establishing appellants' knowledge that the Delfin was transporting marijuana. Resolving all credibility issues in favor of the verdict, as we must on reviewing a sufficiency of the evidence claim, see *Batista-Polanco*, 927 F.2d at 17, the evidence showed that 114 bales of marijuana were in plain view on a small 35-foot boat. Appellants' clothing, food and cooking equipment were found on top of and adjacent to the bales of marijuana. In addition, the Coast Guard officers smelled marijuana upon boarding the boat. The jury evidently decided to disbelieve Captain Rojas's testimony that the marijuana was not in plain view and so well-packaged that its odor could not be detected. This court has previously stated that " 'where crewmen are found aboard a vessel upon which the presence of contraband is obvious, their conspiracy is inferable.' " *United States v. Quejada-Zurique*, 708 F.2d 857, 860 (1st Cir.) (quoting *United States v. Martinez*, 700 F.2d 1358, 1366 (11th Cir.1983)), cert. denied, 464 U.S. 855, 104 S.Ct. 173, 78 L.Ed.2d 156 (1983).

In addition, branches had been placed on the sides of the boat to make it appear that the crew members were fishing. No fishing gear was found on board, which suggests that the crew was attempting to conceal the nature of its voyage. The jury could also have inferred that "appellants had been brought along to unload ... and that the captain would have made certain in advance of his crew's cooperation." *Quejada–Zurique*, 708 F.2d at 860. Rojas indicated that once the boat arrived at its destination, he might have asked the crew members to help with the "transfer of merchandise." It is true that appellants' defense of lack of knowledge may have presented a reasonable hypothesis. Nevertheless, the government's evidence against them did not have to exclude every reasonable hypothesis of innocence, *Batista–Polanco*, 927 F.2d at 17. The evidence, even though circumstantial, was sufficient.

## C. *Jurisdiction*

Appellants argue that the government failed to present sufficient evidence that the Delfin was subject to the jurisdiction of the United States as required by 46 U.S.C.App. § 1903(a). At trial, the government presented a certification of the Secretary of State stating that the Colombian government had denied registry of the Delfin. Appellants claim that the certification contained insufficient information to establish jurisdiction beyond a reasonable doubt.

46 U.S.C.App. § 1903(c)(1)(A) defines a vessel subject to the jurisdiction of the United States as including a vessel without nationality. Section 1903(c)(2)(A) defines a vessel without nationality as one in which "the master or person in charge makes a claim of registry, which claim is denied by the flag nation whose registry is claimed." The captain of the Delfin claimed that the vessel was registered in Colombia. The Colombian government denied this claim and the United States Attorney proved the denial by presenting a certification of the Secretary of State as provided by § 1903(c)(2). The certification stated that "on October 13, 1990, Chief Warrant Officer Green, duty officer at the U.S. Embassy in Bogota, contacted General Rodriguez, who represented the Government of Colombia with authority to verify registry of vessels claiming Colombian registration" and stated that the Delfin was not registered under the laws of Colombia. Although we agree with the district court that it would have been better if the certification had contained more specific information, we find that the certification contained sufficient information to prove jurisdiction beyond a reasonable doubt. In addition, the certification, bearing a Department of State seal and the signature of a Department of State official authorized to authenticate such documents, was a self-authenticating document pursuant to Fed. R.Evid. 902(1). Accordingly, we find that the district court did not abuse its discretion in admitting the certification.

We have considered all of appellants' arguments and find them to be without merit. The judgments of conviction are *affirmed.*