1 F.3d 1235
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marcellus REID, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Anthony G. Smalls, Defendant-Appellant.
 Nos. 92-5702, 92-5703.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 9, 1993.
Decided: July 30, 1993.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.
 Gary Hayne Smith, for Appellant Smalls; Joseph Stuart Lazarsky, for Appellant Reid.
 Leslie Bonner McClendon, Special Assistant United States Attorney, for Appellee.
 Richard Cullen, United States Attorney, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before HALL and NIEMEYER, Circuit Judges, and BRITT, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Marcellus Reid and Anthony Smalls appeal their convictions of aiding and abetting false statements to a licensed firearms dealer in violation of 18 U.S.C. Secs. 2 and 924(a)(1)(A). We affirm.
 
 I.
 
 2
 Marcellus Reid and Anthony Smalls are residents of the District of Columbia, and Maryland, respectively. On September 27, 1991, they drove to Dale City, Virginia, and offered Eric Haywood, a Virginia resident, $50 to purchase several handguns for them.
 
 
 3
 The trio then drove to Virginia Guns, a federally licensed firearms dealer in Stafford, Virginia, and Haywood attempted to purchase a large number of firearms. When Bill Wilson (Virginia Guns' owner) became suspicious that Haywood was making a "straw purchase" for Reid and Smalls, he claimed that the store's computer was down and told Haywood to return the next day. Wilson then contacted Jeff Grabman, an agent with the Bureau of Alcohol, Tobacco, and Firearms ["ATF"], who arranged to have the store surveilled.
 
 
 4
 The next day, the trio returned to Virginia Guns and Haywood purchased six guns and the appropriate ammunition. Wilson confirmed that these were the three individuals from the previous day, and the ATF agents followed the men to Haywood's Dale City residence. After Haywood went into the house, the agents saw Reid and Smalls put the bag containing the guns into the trunk of their car. The appellants then drove north on Interstate 95 toward Washington, D.C., with the ATF agents following.
 
 
 5
 Reid and Smalls apparently became aware that the agents were following them and went back to Dale City to pick up Haywood. They then resumed driving toward Washington. However, a few minutes later, they returned to Dale City. Haywood got out of the car and took the bag that had contained the guns into his house.[1] Then, for the third time, Reid and Smalls began driving toward Washington.
 
 
 6
 When the appellants reached Washington, the agents forced their car to stop. Reid and Smalls were handcuffed, although the agents informed them that they were not under arrest and that the purpose of the stop was merely to search the car for guns and ammunition. When the search proved fruitless, the agents removed the handcuffs and gave the pair Miranda warnings.
 
 
 7
 Unfortunately for Reid and Smalls, while the search was occurring, a rental car company agent stopped at the scene, told the officers that the appellants' car was overdue, and had it towed away. Consequently, the appellants were left stranded on the highway.
 
 
 8
 The appellants accepted the ATF agents' offer of a ride and asked to be driven to a nearby gas station. During the drive, Agent Grabman told Smalls that he had witnessed the gun purchase and asked Smalls to tell him what had happened. Smalls confessed that he and Reid had paid Haywood to purchase the firearms for them. When they arrived at the gas station, Grabman read Smalls his Miranda rights for the second time and Smalls gave the following handwritten confession:
 
 
 9
 On September 27th I Anthony Smalls was at home when the phone rang it was a friend ask me to come pick him up from S.E. D.C. We then went to [illegible] Street, S.E. were I overheard some guys talking about buying guns from Va. So I wanted to buy one for myself, then someone ask me if I would sell them one so I said let me see if I could get them. Later that day, I ask a friend named Eric to buy them for me he said he would for $50 dollars. So we went to the gun store to buy them. We could not get [them] that night so we came back today at 10:00 a.m. were they were bought then I notice that we were being followed by a unmarked car. We were pulled over then arrested by the arresting officer. When I knew that we were being followed I turned around to drop off the guns then we started for home when we were pulled over. I Anthony Small and Marcellus Reid paid Eric Haywood $50 dollars to buy them then we gave $535 dollars to buy 4 Davis 380 automatic handguns & 2 Davis 32 automatic handguns. We bought them from Virginia Guns. /s/ Anthony Smalls Sept. 28. 1991
 
 
 10
 Reid and Smalls were indicted for aiding and abetting Hayward's false statements on the firearms form. The district court denied their pre-trial motions to suppress Smalls' confession. The court found that the agents had probable cause to arrest the appellants, that Smalls had waived his Miranda rights, and that the confession was voluntary.
 
 
 11
 Both defendants were convicted and received sentences of 12 months imprisonment. They appeal.
 
 II.
 
 12
 On appeal, the appellants[2] argue that Smalls' confession (a) was the product of an illegal arrest and must be suppressed under Dunaway v. New York, 442 U.S. 200, 217-19 (1979); (b) was obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966); and (c) was "involuntary" under the Fifth Amendment's Due Process Clause.
 
 
 13
 A. Was Smalls' arrest proper?Under Dunaway v. New York, 442 U.S. at 217-19, a confession obtained as a result of an illegal arrest must be suppressed unless intervening events break the causal connection between the illegal arrest and the confession. Smalls argues that his arrest was illegal because the ATF agents lacked sufficient probable cause to conclude that a felony had been committed.
 
 
 14
 Suppose we assume that Smalls was arrested during the initial stop. But see United States v. Crittendon, 883 F.2d 326 (4th Cir. 1989) (brief handcuffing of suspect that was necessary to preserve the status quo and protect officer safety was not an arrest). Even so, Smalls fails to state a Dunaway claim for two reasons. First, as soon as the agents discovered that the appellants' vehicle did not contain any firearms, Smalls was released from custody, and he was free to leave. Therefore, even if the initial arrest was illegal, Smalls' subsequent release would constitute an intervening event that would break the causal chain between the arrest and the confession. See Dunaway, 442 U.S. at 219; see also, Wayne R. LaFave & Jerold H. Israel, Criminal Procedure Sec. 9.4(a), at 745-46 (termination of the illegal custody qualifies as an intervening circumstance) (citation omitted) (1984).
 
 
 15
 Second, Smalls' arrest was not illegal because the ATF agents had probable cause to conclude that he had committed a felony. See United States v. Watson, 423 U.S. 411 (1976) (warrantless arrest is permitted if the officer has probable cause to believe that a felony has been committed, even if outside of his presence). The officers had received a reliable tip that a straw purchase had been attempted on September 27, 1991. Their belief in the tip's accuracy was strengthened when Haywood, Reid, and Smalls all returned to Virginia Guns the next day to complete the purchase. Finally, the agents' suspicions were strongly confirmed by the appellants' bizarre post-purchase shenanigans-returning to Haywood's house twice, Haywood's vacillation about whether to be in or out of the car, and the removal of some or all the guns from the trunk after the ATF surveillance was apparently detected. These factors were sufficient to support a finding that probable cause existed to arrest Smalls.
 
 
 16
 B. Was the confession obtained in violation of Miranda?
 
 
 17
 The appellants also challenge the admission of Smalls' confession, arguing that it was obtained in violation of his rights under Miranda v. Arizona, 384 U.S. at 436. In Miranda, the Supreme Court fashioned a procedural mechanism designed to safeguard a defendant's Fifth Amendment privilege against self-incrimination from the inherently coercive effects of custodial interrogation. The test for determining if the defendant is in custody is whether, under the totality of circumstances, the "suspect's freedom of action is curtailed to a degree associated with formal arrest." Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (internal quotations omitted).
 
 
 18
 We conclude that Smalls was not in custody at the time he confessed, and, therefore, Miranda does not apply. Miranda, 384 U.S. at 477-78. After the search of the automobile revealed that no weapons were present, the appellants were released. At this point, Smalls was free to leave and he was also free to reject the agents' offer of a ride. Although we applaud the agents' caution in giving Smalls Miranda warnings, we conclude that this action was unnecessary-Miranda simply was not triggered.
 
 
 19
 C. Did the officers violate Smalls' Fifth Amendment rights?
 
 
 20
 Smalls also argues that the entire situation-the felony stop, the handcuffing, driving the appellants to their destination in separate cars, and the alleged promises that Smalls would receive little or no incarceration if he cooperated-rendered his confession involuntary under the Fifth Amendment's Due Process clause. To determine the voluntariness of a confession, the district court must inquire whether, under the totality of circumstances, the ATF agents overcame Smalls' free will. Townsend v. Sain, 372 U.S. 293, 307 (1963). The district court's voluntariness ruling is reviewed de novo. Arizona v. Fulminante, 111 S.Ct. 1246 (1991).
 
 
 21
 We conclude that the district court correctly ruled that Smalls' confession was voluntary. First, the government cannot be blamed for the appellants' predicament after their car was towed.[3] For "coercion" to be relevant to a voluntariness claim, it must be the result of governmental conduct. Colorado v. Connelly, 479 U.S. 157, 165 (1986) (even if mentally ill defendant "ordered by the voice of God" to confess was "coerced," the coercion was not attributable to the government); see also Florida v. Bostick, 111 S.Ct. 2382, 2387 (1991) (even though defendant's movements were restricted, these restrictions were not the result of government conduct). Second, Smalls was given Miranda warnings twice. This Court has previously noted that, when the suspect has been advised of his rights, an ensuing confession is more likely to be voluntary. Rook v. Rice, 783 F.2d 401, 405 (4th Cir.), cert. denied, 478 U.S. 1022 (1986). Third, even though the oral confession took place in a police car-a factor that would normally increase the encounter's coercive aspects-we do not judge coerciveness in a vacuum. Smalls was in the car of his own free will.
 
 
 22
 Then there is Smalls' claim that the agents promised he would be treated more leniently if he confessed.[4] This Court has previously held that a promise of leniency does not necessarily make a confession involuntary. United States v. Shears, 762 F.2d 397, 401-03 (4th Cir. 1985) (confession voluntary despite defendant's perception that leniency had been offered); see also United States v. Harris, 914 F.2d 927, 933 (7th Cir. 1990) (confession voluntary even though police solicited confession by offering to reduce the charges). Under the circumstances of this case, the district court properly concluded that Smalls' confession was voluntary.
 
 AFFIRMED
 
 
 [1]
 The agents testified that they were unable to determine whether any of the guns had been taken from the bag and left in the trunk of appellants' car
 
 
 [2]
 The government has not raised the issue of Reid's standing to object to the violation of Smalls' constitutional rights. See United States v. Robinson-Munoz, 961 F.2d 300, 303 (1st Cir. 1992) (Fifth Amendment right against self-incrimination is personal in nature and therefore not available to defendant to bar admission of statements of codefendant obtained in violation of codefendant's rights)
 
 
 [3]
 Nothing in the record indicates government complicity in the repossession
 
 
 [4]
 Agent Grabman testified that he merely told Smalls that his cooperation would be brought to the attention of the U.S. Attorney's Office