GUSTAVO A. GELPÍ* , UNITED STATES DISTRICT JUDGE
Pending before the court are the defendants Harold Esquilin-Montanez and James Stewart-Carrasquillo's motions for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure (Dockets No. 243, 245) and the government's response thereto (Docket No. 247). After carefully considering the parties' arguments, the court DENIES the defendants' motions for the reasons explained below.
I. BACKGROUND
On August 7, 2017, a jury found co-defendants Harold Esquilin-Montanez ("Esquilin") and James Stewart-Carrasquillo ("Stewart") guilty of the three counts they were indicted for: (1) possession with the intent to distribute more than five kilograms of cocaine on board a vessel subject to U.S. jurisdiction (aiding and abetting) in violation of 46 U.S.C. § 70503(a)(1) and 18 U.S.C. § 2 ; (2) conspiracy to possess with the intent to distribute more than five kilograms of cocaine on board a vessel subject to U.S. jurisdiction in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b) ; and (3) possession with the intent to distribute more than five kilograms of cocaine (aiding and abetting) in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. See Docket No. 27, 238, 239. Pursuant to the Complaint, Police of Puerto Rico officers from the Ceiba Marine Unit arrested the appearing co-defendants, along with co-defendant Juan Carrasquillo-Soto,[1] on December 10, 2016, after seeing them on board a fishing vessel throwing bales of cocaine into the water. The moving defendants have always maintained that, despite their objections, the drugs were located at sea during a legitimate fishing trip and placed on board by lead defendant Carrasquillo. See Docket No. 196.
Shortly after the verdict, co-defendants filed separate motions under Rule 29 arguing that the evidence adduced at trial was insufficient to support certain elements of the charges and requesting that this court acquit them from their convictions. See Dockets No. 243, 245. The government timely opposed the defendants' motions and asked the court to deny their request. See Docket No. 247.
II. STANDARD OF REVIEW
Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c). In ruling on a motion under this rule, the court must view "the evidence in the light most flattering *349 to the jury's guilty verdict, [and] assess whether a reasonable factfinder could have concluded that the defendant was guilty beyond a reasonable doubt." United States v. Lipscomb, 539 F.3d 32, 40 (1st Cir. 2008) (alteration in original). In addition, the court will give "equal weight to direct and circumstantial evidence," United States v. Appolon, 715 F.3d 362, 367 (1st Cir. 2013), and refrain from "assess[ing] the credibility of witnesses, as that is a role reserved for the jury." Lipscomb, 539 F.3d at 40 (quoting United States v. Trinidad-Acosta, 773 F.3d 298, 310-11 (1st Cir. 2014) ). If, however, evidentiary conflicts, credibility questions or competing inferences (two or more of which are plausible) arise, the trial judge must resolve them in the prosecution's favor. United States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995).
In essence, "[t]he court's duty is to make sure the evidence is sufficient to support the conviction." United States v. Guzman-Montanez, 756 F.3d 1, 10 (1st Cir. 2014). Therefore, "[t]he government need not succeed in eliminating every possible theory consistent with the defendant's innocence." Trinidad-Acosta, 773 F.3d at 310-11 (quoting United States v. Troy, 583 F.3d 20, 24 (1st Cir. 2009) ). "And circumstantial evidence alone may be sufficient to provide a basis for conviction." United States v. Rodriguez-Duran, 507 F.3d 749, 758 (1st Cir. 2007). Consequently, "[d]efendants challenging convictions for insufficiency of evidence face an uphill battle on appeal." Lipscomb, 539 F.3d 32, 40 (quoting United States v. O'Shea, 426 F.3d 475, 479 (1st Cir. 2005) ).
III. DISCUSSION
1. Possession with Intent to Distribute Charges
The defendants contend that the evidence was insufficient to support a conviction for the charge of possession with intent to distribute.
"In order to prove possession with intent to distribute, the government must show that the defendants knowingly and intentionally possessed, either actually or constructively, a controlled substance with the specific intent to distribute." United States v. Ayala-Vazquez, 751 F.3d 1, 12 (1st Cir. 2014) (citing United States v. Garcia-Carrasquillo, 483 F.3d 124, 130 (1st Cir.2007) ). "[T]he requisite knowledge and intention can be inferred from circumstances ...." United States v. McLean, 409 F.3d 492, 501 (1st Cir. 2005). Thus, " '[t]here must be some action, some word, or some conduct that links the individual to the contraband and indicates that he had some stake in it, some power over it.' " Id. (citing In re Sealed Case, 105 F.3d 1460, 1463 (D.C.Cir.1997) ).
" 'Knowing possession' may be proven through either 'actual or constructive possession.' " United States v. Mendoza-Maisonet, No. CR 16-194 (FAB), 298 F.Supp.3d 337, 341, 2018 WL 799153, at *4 (D.P.R. Feb. 9, 2018) (citing United States v. Ridolfi, 768 F.3d 57, 61 (1st Cir. 2014) ). "Actual possession is 'the state of immediate, hands-on physical possession.' " United States v. Rivera Marin, No. CR 12-616 (DRD), 2014 WL 12776167, at *12 (D.P.R. Sept. 28, 2014) (citing United States v. Zavala Maldonado, 23 F.3d 4, 6 (1st Cir. 1994) ). On the other hand, " '[c]onstructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object either directly or through others.' " United States v. Apicelli, 839 F.3d 75, 79 (1st Cir. 2016), cert. denied , --- U.S. ----, 137 S.Ct. 1603, 197 L.Ed.2d 729 (2017) (citing United States v. Garcia-Carrasquillo, 483 F.3d 124, 130 (1st Cir. 2007) ). "Possession may be solely by one defendant or jointly with others, which *350 'occurs when both the defendant and another person share power and intent to exercise dominion and control over contraband.' " Ayala-Vazquez, 751 F.3d at 12 (citing United States v. Howard, 687 F.3d 13, 18 (1st Cir.2012) ). See also United States v. Batista-Polanco, 927 F.2d 14, 18-19 (1st Cir.1991) (defendant sitting at table with others while heroin was being packaged was in joint constructive possession of drug). Finally, "[w]here the charges arise from a principal's possession with intent to distribute narcotics, knowledge of the particular controlled substance being distributed is not necessary, and intent to distribute can be inferred from the quantity of drugs involved." United States v. Flores-Rivera, 787 F.3d 1, 22 (1st Cir. 2015) (internal quotation marks and citations omitted).
Here, defendants argue that the government failed to adduce evidence of actual or constructive possession. Specifically, they contest the testimony of FURA[2] Agent Adalberto Del Valle calling it, among other things, implausible and highly impeachable. In sum, Del Valle testified that at approximately 7:00a.m. on December 10, 2016, while on patrol off the coast of Ceiba, Puerto Rico, he and two other officers detected, intercepted and arrested all three co-defendants on board a vessel with twenty-five bales of suspected cocaine. But Stewart and Esquilin challenge Del Valle's assertion that he was able to see them throwing bales of cocaine overboard from a distance of over one hundred (100) feet. Defendants contend that his visibility was impaired by the distance and the fact that, according to other testimony, the defendants were wearing yellow rain jackets with their hoods up covering most of their faces. According to defendants, his incredible testimony cannot be credited.
The government opposes this argument asserting that despite the distance between both vessels at the time they were first detected visually, upon approaching defendants' vessel more closely, Del Valle was able to confirm that both Stewart and Esquilin were the two individuals standing in the front portion of the boat while Carrasquillo was the one captaining it. See Docket No. 247. Moreover, PRPD Sargeant Magaly Diaz, who was on the FURA vessel along with Del Valle at the time, testified that as the FURA officers got closer to defendants' vessel, she saw black packages being thrown overboard and identified Stewart and Esquilin as the two individuals that were standing on top of the bales and Carrasquillo as the man operating the vessel. See Docket No. 206 at pages 116-121. In addition, co-defendant Stewart admitted that his uncle, Carrasquillo, was the only one who knew how to operate the vessel, see Docket No. 226 at page 52, and the record shows that Carrasquillo never left the wheel as he sped off[3] and tried to avoid capture by engaging in a swerve and ramming into the FURA boat.[4] Viewing the record as a whole and taking the evidence in the light most favorable to the verdict, the court finds that it can be logically and reasonably inferred from defendants' positions inside the vessel at the time of capture that Stewart and Esquilin were the ones throwing the bales overboard, and thus, in possession of the cocaine. See *351 United States v. Romero, 32 F.3d 641 (1st Cir. 1994) (holding the government's evidence of possession was ample for purposes of determining sufficient evidence existed to support defendants' convictions for possessing, while aboard vessel subject to jurisdiction of the United States, cocaine intended for distribution, where law enforcement crewmen testified they saw people aboard defendants' vessel throwing bales overboard). "[B]y having an amount of the drug in his own possession however briefly, [defendant] was 'directly involved' with the drug, which suffices to hold him accountable for the contraband." United States v. May, 343 F.3d 1, 6 (1st Cir. 2003).
And even in the face of defendants' attacks on Del Valle's testimony regarding his lack of visibility or questionable memory, the court must hold that their "witness-credibility-based sufficiency argument is hopeless." United States v. Gonsalves, 859 F.3d 95, 111 (1st Cir. 2017). As the defendants recognize in their motions, "[w]e must ... defer to the jury with respect to all credibility determinations." United States v. Romero, 32 F.3d 641, 645 (1st Cir. 1994).
In reviewing whether the evidence is sufficient to establish that the defendants possessed the bales of cocaine, we must consider all the evidence in the record as a whole, including all reasonable inferences therefrom, in the light most favorable to the verdict, with a view to whether a rational trier of fact could have found the element of possession beyond a reasonable doubt.
Id. (citing United States v. O'Brien, 14 F.3d 703, 706 (1st Cir.1994) ; United States v. Matiz, 14 F.3d 79, 82 (1st Cir.1994) ; United States v. Sepulveda, 15 F.3d 1161, 1173 (1st Cir.1993) ). The defendants' claims in their Rule 29 motions are a carbon copy of their closing arguments before the jury, which the latter considered and evidently rejected. See United States v. Chambers, 113 F.Supp.3d 729, 739 (S.D.N.Y. 2015) (In support of his Rule 29 motion defendant repeats the same arguments that were central to his summation. "But the jury considered the evidence in light of this argument and, as it was empowered to do, rejected it."). In the instant case, the court is simply not in a position to second-guess the jury's decision to believe or disbelieve a witness.
Moving on from the element of possession, the defendants also argue that the government failed to present evidence adducing to their intent to distribute the cocaine. "Similar to the standard for possession, the 'intent to distribute drugs does not demand proof by direct evidence but can be made manifest through circumstantial evidence alone.' " United States v. Mendoza-Maisonet, No. CR 16-194 (FAB), 2018 WL 799153, at *5 (D.P.R. Feb. 9, 2018) (citing United States v. Bergodere, 40 F.3d 512, 518 (1st Cir. 1994) ). To that effect, the First Court of Appeals has consistently held that the amount of drugs, the manner in which the drugs were packaged and the number of people involved are relevant factors in determining whether a defendant had an intent to distribute. See United States v. Fernandez-Santos, 856 F.3d 10, 19 (1st Cir. 2017) (citing United States v. Cortes-Caban, 691 F.3d 1, 35-36 (1st Cir. 2012) ). See also United States v. Bobadilla-Pagan, 747 F.3d 26, 33 (1st Cir. 2014) ("An inference of intent to distribute may be drawn from the circumstances surrounding possession, including the drug's quantity (i.e., whether it is too large for personal use only), the drug's purity, the defendant's statements or conduct, or the number of people involved and their relationship to the defendant.").
In response to defendants' argument, the government claims that "[t]he large amount of drugs, and the manner in which they were being transported and packaged, *352 also supports a finding that they were intended for distribution." Docket No. 247 at page 6. The court agrees. In the instant case, the parties stipulated that "the drugs seized by FURA agents from the boat the defendants were on on December 10, 2016, consisting of 499 bricks of cocaine weighing approximately 500 kilograms, would be worth approximately $10 million to 12 and a half million dollars." Docket No. 209 at page 57. This considerable amount of drug was wrapped in black plastic and divvied up in bricks[5] in a manner that is traditional and similar to bales recovered in other drug interdictions. See Docket No. 206 at page 19. The proof the government presented was sufficient for a jury to reasonably find that defendants possessed the drug with intent to distribute it. The absence of firearms or ledgers or recordings does not negate the existence of intent to distribute when the element was established through other probative evidence. The court thus finds that a jury could infer the specific intent from the circumstances surrounding the possession of the drug. Accordingly, the court will not disturb the jury's conviction on these grounds.
With regards to the possession counts, the defendants finally argue that their mere presence at the scene of the crime is insufficient to prove aiding and abetting. Defendants "are right that their 'mere presence' at the scene of criminal activity is not enough to convict them." United States v. Pena-Santo, 809 F.3d 686, 697 (1st Cir. 2015) (citing United States v. Guerrero, 114 F.3d 332, 342 (1st Cir.1997) ). Nevertheless, "[t] he government can satisfy its burden by demonstrating 'that the defendant consciously shared the principal's knowledge of the underlying criminal act, and intended to help the principal.' " United States v. Negron-Sostre, 790 F.3d 295, 311 (1st Cir. 2015) (citing United States v. Bristol-Martir, 570 F.3d 29, 39 (1st Cir.2009) ).
It is a well-settled principle of aiding and abetting liability that if the government proves the elements of a crime charged by proof beyond a reasonable doubt, a defendant may be held indirectly responsible as an aider and abettor if he "associated himself with the venture ... participated in it as something that he wished to bring about, and ... sought by his actions to make the venture succeed."
Negron-Sostre, 790 F.3d at 311 (1st Cir. 2015) (citing United States v. Lugo Guerrero, 524 F.3d 5, 13 (1st Cir.2008) ). Where the government largely relies upon circumstantial evidence to prove the defendants' knowing participation in the transportation of a controlled substance, "the evidence is sufficient to convict if it adequately supports the requisite two-step inference: (1) that the vessel was engaged in obviously illegal activity and (2) that each defendant was ready to assist in the criminal enterprise." United States v. Perez-Melendez, 599 F.3d 31, 42 (1st Cir. 2010) (citing United States v. Guerrero, 114 F.3d 332, 342 (1st Cir.1997) ).
The court will now summarize the relevant evidence surrounding the circumstances of this trip on which defendants' claim they were "merely" present. It is uncontested that both Stewart and Esquilin were employees of Carrasquillo, who had a construction company, and they had for years worked together on various projects. See Docket No. 223 at pages 40-41, 59-60, 114. The jury here heard testimony from Stewart and his wife regarding Carrasquillo's visit on December 9th, 2016 to supposedly invite Stewart on a fishing trip. The defense's theory is that Stewart and Esquilin went on this legitimate voyage to help Carrasquillo drop twenty (20) lobster *353 cages weighing approximately thirty-five (35) pounds each. See Docket No. 223 at page 130; Docket No. 226 at page 28. Yet, in order to talk to his uncle about what he claims was an innocent subject matter, Stewart stepped outside of his home where they could not be overheard by the rest of Stewart's family. See Docket No. 223 at page 73. According to both witnesses, the conversation was extremely brief, lasting just one to two minutes. This despite it being the first time Stewart spoke to his uncle about a fishing trip for which he had to wake up at 3:30a.m. and navigate for at least an hour just to reach the drop off location. See Docket No. 223 at pages 121-122; Docket No. 226 at pages 62-63; Docket No. 223 at pages 78, 87.
Stewart's sworn testimony was that the three of them left the pier of Los Corchos in Naguabo, Puerto Rico on or about 4:30a.m. to go lay these lobster traps. See Docket No. 223 at page 126, 130. However, these statements were in contrast with Police Officer Rolando Melendez's, who interviewed Stewart shortly after the latter's arrest. According to Melendez, Stewart told him that the defendants left the Naguabo dock of El Malecon at approximately 5:30a.m. to go trawling, not drop lobster cages. See Docket No 231 at page 41. With regards to the dock of Los Corchos, Melendez also testified that the road to reach it is long and full of holes and that the pier is not in the best conditions. See id. at pages 45-47. In addition, he stated that the pier at Los Corchos is an area of interest for FURA agents because it's used by people that don't want to be seen. Id. at page 48.
Now, according to Stewart, his uncle saw the bales floating in the ocean in the exact spot where they finished setting the lobster cages, and that despite defendants' objections, Carrasquillo lifted the twenty-five bales by himself. See Docket No. 223 at page 102. Stewart also testified that the loading process took Carrasquillo around forty-five (45) minutes and that another hour transpired between the time his uncle finished loading the bales onto the boat and the moment in which he yelled at defendants to throw the bales in the water. See Docket No. 223 at pages 99-100, 104-105. According to one of FURA's arresting officers, the defendants were traveling through a sector where he has performed various drug interdictions. Moreover, the area is rocky, has rough conditions and is difficult to navigate. See Docket No. 202 at pages 45-47. Finally, as previously stated, two FURA agents testified that they saw defendants dumping the bales overboard after being spotted by law enforcement.
In light of the circumstantial evidence presented, the jury could have reasonably believed that, given its brevity, the conversation outside of Stewart's home was not the first time he and his uncle spoke of the trip. After, all, they are both relatives as well as co-workers. The jury could have reasonably believed that, given the need for privacy, the topic of their exchange was not fishing. The jury could have reasonably believed that, given the comparable heaviness of the objects in question, defendants went on the trip to help Carrasquillo lift the bales from the ocean as opposed to drop off lobster cages. The jury could have also reasonably dis believed that defendants just sat there for almost two (2) hours doing nothing, not lending Carrasquillo a hand in the completion of the mission. See United States v. Garcia-Carrasquillo, 483 F.3d 124, 131 (1st Cir. 2007) ("From this evidence, a rational juror could reasonably infer that [defendant] accompanied his uncle to the house filled with drugs because [the uncle] trusted his nephew enough to enlist his help in committing the crime charged."). Moreover, the jury could have reasonably concluded that defendants assisted Carrasquillo in getting rid of incriminating evidence, *354 which suggests awareness of guilt. See id. ("The jury could further infer that [defendant] was in fact so aiding his uncle, especially given that he knowingly ran from and shot at the police when they attempted to apprehend them."). Simply put, "[a] jury is entitled to conclude that those aboard a vessel engaged in obvious illegal activity are not innocent bystanders." United States v. Molinares Charris, 822 F.2d 1213, 1218 (1st Cir. 1987) (citing United States v. Beltran, 761 F.2d 1, 6 (1st Cir.1985) ; United States v. Lopez, 709 F.2d 742, 746 (1st Cir. 1983) ).
The prosecution's proof "need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt." Lugo Guerrero, 524 F.3d at 13 (citations omitted). See also United States v. Ortiz, 447 F.3d 28, 33 (1st Cir.2006) ("[T]he possibility of innocuous explanations for [a defendant's] behavior does not foreclose the jury's contrary inferences."). "The question we must answer is whether the jury's verdict is supported by 'a plausible rendition' of the evidence taken as a whole ...." United States v. Ayala-Garcia, 574 F.3d 5, 12 (1st Cir. 2009) (citing United States v. Lopez-Lopez, 282 F.3d 1, 19 (1st Cir.2002). In light of the foregoing account of the proof presented, the court finds that the defendants' "mere presence" argument is unavailing. See United States v. Echeverri, 982 F.2d 675, 678 (1st Cir. 1993) ("[A] defendant's "mere presence" argument will fail in situations where the "mere" is lacking"). Accordingly, we hold that the government presented sufficient evidence for a jury to reasonably conclude that defendants were responsible for aiding and abetting Carrasquillo bring the drug to shore and avoid capture, thereby associating themselves with the illegal venture.
2. Conspiracy Charges
The defendants contend that the evidence was insufficient to support a conviction for the charge of conspiracy to possess with intent to distribute. In particular, defendants argue that the government failed to adduce evidence of the existence of an agreement and of defendants' knowing and willful association with the crime.[6] [7]
To sustain a drug-conspiracy conviction, "the government must show that [a] defendant knowingly agreed with at least one other person to commit a crime, intending that the underlying offense be completed." United States v. Alejandro-Montanez, 778 F.3d 352, 358 (1st Cir. 2015) (alteration in original) (quoting United States v. Ledee, 772 F.3d 21, 32 (1st Cir. 2014) ). The agreement may be express or tacit, and proven directly or circumstantially. See United States v. Pena-Santo, 809 F.3d 686, 696 (1st Cir. 2015) (citing Trinidad-Acosta, 773 F.3d at 307 ). Similarly, to convict a defendant of a *355 drug conspiracy, "the government must prove beyond a reasonable doubt that he knew about and voluntarily participated in the conspiracy, ... and proof may come from direct or circumstantial evidence, like inferences drawn 'from members' 'words and actions' and from 'the interdependence of activities and persons involved.' " United States v. Acosta-Colon, 741 F.3d 179, 190 (1st Cir. 2013) (quoting United States v. Ortiz de Jesus, 230 F.3d 1, 5 (1st Cir. 2000) ).
"It is hornbook law that a defendant may be found guilty of participating in a drug-trafficking conspiracy without knowing the full extent of the enterprise or the identities of all the coconspirators." Ortiz de Jesus, 230 F.3d at 5. "Moreover, 'each coconspirator need not know of or have contact with all other members, nor must they know all of the details of the conspiracy or participate in every act in furtherance of it.' " Cortes-Caban, 691 F.3d at 13-14 (citing United States v. Martinez-Medina, 279 F.3d 105, 113 (1st Cir.2002) ). Also, how one "participates" in a drug conspiracy is not limited to being an actual importer or distributor because "doing 'ancillary' task[s] ... can suffice, if done to further the conspiracy's objective." Acosta-Colon, 741 F.3d at 197-98 (citing United States v. Aviles-Colon, 536 F.3d 1, 15 (1st Cir. 2008) ). Against this legal framework, the court recounts the pertinent facts in the light most favorable to the jury's verdict.
Given the evidence summarized in the previous section, the court finds that record here supports the conclusion that the defendants reached an agreement, either expressly or tacitly, with Carrasquillo to help the latter in the illegal venture. The evidence showed that defendants were standing next to twenty-five (25) bales of cocaine that were in plain view on a small 35-foot boat. The First Circuit "has previously stated that 'where crewmen are found aboard a vessel upon which the presence of contraband is obvious, their conspiracy is inferable.' " United States v. Robinson-Munoz, 961 F.2d 300, 304 (1st Cir. 1992) (citing United States v. Quejada-Zurique, 708 F.2d 857, 860 (1st Cir. 1983) ). In addition, two FURA agents saw the defendants dumping the bales overboard after realizing they had been detected. "Cooperative efforts to conceal and destroy evidence further support a conclusion that defendants knowingly agreed to their roles in the conspiracy." United States v. Al-Din, 631 Fed.Appx. 313, 332 (6th Cir. 2015) (citing United States v. Etheridge, 424 F.2d 951, 954, 964 (6th Cir.1970) ; United States v. Caver, 470 F.3d 220, 233 (6th Cir.2006) (conspiracy demonstrated in part through the defendants' joint efforts to evade law enforcement) ).
The First Circuit has held that similar circumstantial considerations lend support to a reasonable inference that a defendant aboard a vessel had the requisite knowledge.
The Court has explained that ... given the necessarily close relation of crew members on a small vessel full of narcotics it is reasonable for the jury to conclude that 'conspirators engaged in conduct which by its nature is kept secret from outsiders, would reasonably not allow the presence of innocent bystanders in their midst while conducting a lengthy, illegal operation.' "
United States v. Sandoval, 787 F.Supp. 275, 279 (D.P.R. 1992) (citing United States v. Luciano Pacheco, 794 F.2d 7, 11 (1st Cir.1986). See also Quejada-Zurique, 708 F.2d at 859 ("Most frequently, however, courts have found that such factors as the length of the voyage, the amount of the marijuana on board, and the necessarily close relationship of those on board ... support an inference of knowing participation by the crewmembers."). "Although *356 the United States did not present voice recordings or text messages evidencing [defendant's] state of mind or intent to enter into an agreement, the circumstantial evidence overwhelmingly established that [their] presence onboard the yola was not due to mere happenstance but rather because [they] had voluntarily joined the conspiracy." United States v. Rosario, 17 F.Supp.3d 144, 156 (D.P.R. 2014), aff'd sub nom. United States v. Martinez, 640 Fed.Appx. 18 (1st Cir. 2016).
"Courts have constituently upheld similar convictions where the evidence was circumstantial in nature." Rosario, 17 F.Supp.3d at 156-457 (citing United States v. Robinson-Munoz, 961 F.2d 300 (1st Cir.1992) (defendant had knowledge that boat was transporting marijuana; 114 bales of marijuana were in plain view on 35-foot boat, crew members' clothing, food, and cooking equipment were found on top of and adjacent to bales, branches had been placed on sides of boat to make it appear that crew members were fishing, and no fishing gear was found on board); United States v. Santana-Rosa, 132 F.3d 860 (1st Cir.1998) (there was sufficient circumstantial evidence that defendants were persons on vessel who dumped cocaine into ocean to support their convictions of possessing cocaine with intent to distribute, where four people were witnessed running from vessel into mangroves, defendants were arrested in mangroves, no others were encountered in area, there was testimony that area was remote and uninhabited, and agent aided by infrared night vision system opined that defendants were ones who fled vessel); United States v. Romero, 32 F.3d 641 (1st Cir.1994) (there was sufficient evidence that defendants had been in possession of bales of cocaine that Coast Guard recovered from ocean to support their convictions for possessing, while aboard vessel subject to jurisdiction of the United States, cocaine intended for distribution, in light of testimony that defendants were seen throwing bales from their vessel into water, that same bales were present in courtroom, that defendants' vessel attempted to evade surveillance aircraft, that vessel was of type commonly used for drug smuggling, that vessel's cargo area had been washed down with gasoline, apparently to eliminate traces of controlled substance, that bales of cocaine were discovered within expected area, and that no other boats were in area); United States v. Victoria, 876 F.2d 1009 (1st Cir.1989) (notwithstanding defendant's contention that he was "merely present" on vessel and therefore did not possess marijuana with intent to distribute in that he was electrician brought on vessel in morning to help with repairs and was prevented from leaving by crew member with gun, evidence was sufficient to support defendant's conviction for knowingly possessing marijuana with intent to distribute it; given obvious presence of many bales of marijuana, jury could have found that crew would not have brought anyone, even electrician, on board unless he knew about, and was helping with, enterprise); United States v. Sandoval, 787 F.Supp. 275 (D.P.R. 1992) (evidence, although circumstantial, was sufficient to allow jury to find that defendants knowingly and intentionally possessed cocaine with intent to distribute, even though they claimed that they were merely present on vessel transporting cocaine; very small vessel on extended voyage was carrying large amount of contraband, defendants explanation for their voyage was not credible, voyage commenced in known drug-source country, vessel changed course after its first encounter with coast guard, and there was evidence from which jury could infer that crew members on vessel had responsibility to retrieve cocaine from its hiding places and to facilitate its distribution) ).
"It is true that [defendants'] defense of lack of knowledge may have presented a *357 reasonable hypothesis. Nevertheless, the government's evidence against them did not have to exclude every reasonable hypothesis of innocence, ... The evidence, even though circumstantial, was sufficient." Robinson-Munoz, 961 F.2d at 305 (internal citations omitted). Although the defendants contend that they were reluctant to Carrasquillo's endeavors, the jury was entitled to disbelieve this explanation.
Viewing the evidence as a whole, the court finds that the facts and the reasonable inferences therefrom support the jury's guilty verdict. The defendants' request for acquittal of the conspiracy charge is thus DENIED .
IV. CONCLUSION
For the reasons explained above, the court DENIES the defendants' motions to acquit (Dockets No. 243, 245).
IT IS SO ORDERED.

Due to Judge Juan M. Pérez-Giménez's unavailability, the undersigned has agreed to attend the pending Rule 29 motions, which can be readily resolved by virtue of the trial transcript vis-à-vis applicable law.

Co-defendant Carrasquillo, who is Stewart's uncle, was also arrested, charged and indicted along with the above-captioned defendants. Carrasquillo pleaded guilty to Count Three of the Indictment. See Docket No. 134-136.

"FURA is the Spanish acronym for a division of the Puerto Rico Police Department, the name of which can be translated as 'Forces United for Rapid Action.' " Diaz-Roman v. Denis, No. CIV. 08-1420 (GAG), 2010 WL 3069442, at *3 (D.P.R. Aug. 2, 2010).

Docket No. 226 at page 54, lines 11-13.

Docket No. 206 at pages 116, 121.

Docket No. 209 at pages 14-15, 44.

As part of its argument, Stewart complains that in its closing argument, "the government suggested to the jury that the defendants should have stopped Carrasquillo from loading the drugs on board the boat ...," Docket No. 243 at page 7, but that the law does not require these types of affirmative facts to relieve a defendant from association with a conspiracy. It appears to the court that the defendant's objection is the result of some sort of delayed reaction. While the court understands that "[h]indsight is always 20/20 ...," United States v. Coombs, 857 F.3d 439, 446 (1st Cir. 2017), the argument is belated and would have fared better perhaps if included in counsel's closing argument instead of a Rule 29 motion.

The defendants also discredit Del Valle's testimony and raise the "mere presence" defense in their challenge of the sufficiency of the evidence of a conspiracy. The court has already addressed these arguments supra and incorporates the holding herein for purposes of the conspiracy conviction.